UNITED STATES of America, Appellee,

v.

Ronald PARADIS, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Norman  BELIVEAU,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Christine  BELIVEAU,
Defendant, Appellant.

Nos. 85–1524 to 85–1526.

United States Court of Appeals,
First Circuit.

Argued May 6, 1986.

Decided Sept. 29, 1986.

Juliane Balliro with whom Joseph J. Balliro and Balliro, Mondano & Balliro, Boston, Mass., was on brief for defendant, appellant Ronald Paradis.

Jean-Claude Sakellarios with whom Sakellarios & Associates, Manchester, N.H., was on brief, for defendant, appellant Norman Beliveau.

Paul W. Hodes with whom Hage & Hodes, Manchester, N.H., was on brief for defendant, appellant Christine Beliveau.

Douglas J. Miller, Asst. U.S. Atty., with whom Richard V. Wiebusch, U.S. Atty., Concord, N.H., was on brief for appellee.

Before BREYER and TORRUELLA, Circuit Judges, and MALETZ,* Senior Judge.

TORRUELLA, Circuit Judge.

Appellants Christine Beliveau, Ronald Paradis and Norman Beliveau were convicted after a joint jury trial in the United States District Court for the District of New Hampshire. Appellants challenge their convictions on several grounds. We find that none of these grounds warrants reversal and thus affirm the district court.

I. Appellant Paradis

Appellant was convicted of (1) possession of cocaine, in violation of 21 U.S.C. § 844; (2) conspiracy to distribute and possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846; and (3) possession of cocaine with intent to distribute, distribution of cocaine, and aiding and abetting the

---

* Of the United States Court of International Trade, sitting by designation.

possession of cocaine with intent to distribute and the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was fined $5,000 and sentenced to a fifteen-year term of imprisonment and a ten-year special parole term.

■ 1. Appellant first contends that the trial court erred in denying a motion for continuance of trial under the Speedy Trial Act (the Act), 18 U.S.C. §§ 3161–3174. Paradis was arraigned on February 22, 1985. On March 6, 1985 arraignment counsel withdrew and trial counsel filed his appearance on Paradis' behalf. At the time, the district court set May 3, 1985 as the trial date. Subsequently, on March 14, 1985, the district court advanced the trial date to April 1, 1985. On March 18, 1985, appellant filed a Motion for Reconsideration, arguing the impossibility to adequately prepare for trial, but to no avail. The district court denied the continuance motion on March 27, 1985. Jury selection took place as scheduled on April 1, 1985 and trial began on April 8, 1985. Appellant claims that he was entitled to continuance under Section 3161(c)(2) of the Act.

Section 3161(c)(2) reads:

Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

Paradis argues that this 30–day period is extended by the periods of excludable delay "in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence," as provided in Section 3161(h) of the Act. He relies on the Senate Report on the 1979 Amendments to the Act, viz:

Prohibiting trial less than 30 days after the defendant appears in a position to begin preparing his defense more fully protects basic due process rights. It is the Committee's intent that the exclusions provided in section 3161(h) apply to the 30–day minimum to trial provision. Therefore, if an event occurs which would automatically exclude time under subsection (h), such as pretrial mental examination, that time is not only excluded from computing the time within which trial must occur prior to imposition of the dismissal sanctions, but time would also automatically be excluded in computing the 30–day minimum period of time, during which the judge could not schedule trial without the defendant's consent.

Sen.Rep. 212, 96th Cong., 1st Sess. (1979), p. 32. Paradis claims that he is entitled to a new trial because if the exclusions provided in section 3161(h) are applied to section 3162, the trial took place less than 30 days after the March 6, 1985 appearance, in violation of the Act.

Even if we were to agree with appellant, he still would not be entitled to prevail. The sanction for failing to bring the defendant to trial as called for in the Act is dismissal of the indictment upon motion of the defendant. 18 U.S.C. § 3162(a)(2). The defendant must make this motion prior to trial or the right to dismissal is waived. *Id.* It is undisputed that Paradis failed to move for dismissal under section 3162(a)(2). Thus, the defendant waived his right to the sanction of dismissal under the Act. *See, e.g., United States v. Tenorio-Angel*, 756 F.2d 1505, 1508 (11th Cir.1985).[1]

2. Appellant next contends that the district court erred in denying a pretrial motion to suppress. Paradis was arrested at approximately 2:15 PM on February 7, 1985. The arresting officer himself admittedly lacked probable cause to arrest Paradis, and arrested appellant because a su-

---

**1.** Paradis claims that the attorney's failure to move for dismissal prior to trial amounts to ineffective assistance of counsel justifying reversal. Appellant, however, has failed to show that the result of the trial would have been different had it begun at a later date. *See United States v.*

*Palow*, 777 F.2d 52, 57 (1st Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986). Accordingly, we disagree that the attorney's fault requires reversal in the present case.

perior ordered him to do so. Subsequently, at 2:45 PM, Drug Enforcement Administration (DEA) agents arrested codefendants Norman and Christine Beliveau on their way home, shortly after they had met with an undercover DEA agent in a parking lot near Paradis' residence to tell him that Norman Beliveau had "the whole package with him." It was later determined that the "package" contained a plastic bag with approximately 8 ounces of cocaine, which Beliveau had bought with money the agent had given him. Upon receiving the money, Beliveau had gone to Paradis' residence and returned to the parking lot to deliver the cocaine. Paradis was arrested shortly after Beliveau's departure.

Appellant complains that only when the Beliveaus were arrested and the subsequent search revealed that the "package" contained cocaine, did the DEA have probable cause for his arrest. Since Paradis was arrested 30 minutes *before* the Beliveaus, and the arresting officer's knowledge of the facts did not justify a finding of probable cause, appellant argues that no probable cause existed for his arrest, and, therefore, that the district court erred in refusing to suppress (1) evidence seized from his person following the arrest, and (2) statements appellant made while in custody thereafter. We disagree.

■ For one thing, that *the* arresting officer may have lacked probable cause for the arrest of the suspect does not mean that the arrest is invalid for lack of probable cause. *United States v. Rose*, 731 F.2d 1337, 1342–43 (8th Cir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984). It is enough that the collective knowledge and information of all the officers involved establishes probable cause for the arrest. *Id.*, quoting *United States v. Rose*, 541 F.2d 750, 756 (8th Cir.1976), *cert. denied*, 430 U.S. 908, 97 S.Ct. 1178, 51 L.Ed.2d 584 (1977). For another thing, the affidavit of DEA Resident Agent in Charge Al Keaney, submitted at the hearing on appellant's suppression motion, shows that the collective information of the officers involved in the surveillance of the cocaine transactions at issue justified a finding of probable cause for Paradis' arrest.

The affidavit states, among other things, that a confidential informant told DEA agents that Paradis had been trafficking in cocaine for an unspecified period of time. The informant had been instrumental in arranging undercover buys of controlled substances for the Manchester, N.H., Police Department and for the New Hampshire State Police. All information obtained by the informant had been accurate and corroborated by both the DEA and the local agencies involved. The affidavit asserts that the informant arranged on October 22, 1984 for a cocaine deal between agent Keaney and codefendant Norman Beliveau. Thus on October 23, 1984 Beliveau drove from his house to a house at RFD 2, Jaime Drive in Weare, N.H., back to his house and finally to a prearranged rendezvous area in the parking lot of the New Hampshire Employment Security Office, where he met agent Keaney and delivered two ounces of cocaine. At the time, Beliveau stated that he had gone to his source's residence to buy the cocaine. The house at RFD 2, Jaime Drive, was registered to Ronald Paradis.

Agent Keaney again met with Beliveau on February 7, 1985 and gave him $8,000 for the purchase of one half pound of cocaine. Surveillance showed that, as had occurred on October 23, 1984, Beliveau went to Paradis' house at RFD 2, where he waited for 10 minutes until a dark car arrived with a male later identified as Paradis. Paradis and Beliveau entered the house where they remained for approximately 30 minutes. Shortly after Beliveau's departure, Paradis was arrested upon leaving the house at approximately 2:15 PM.

The foregoing could have warranted " 'a man of reasonable caution in the belief that (Paradis)' had committed or was committing an offense," even before the Beliveaus' arrest. *United States v. Baldacchino*, 762 F.2d 170, 175 (1st Cir.1985); *see also United States v. Salinas-Calderón*, 728 F.2d 1298, 1300 (10th Cir.1984). Thus,

we agree with the district court that probable cause existed for Paradis' arrest.

■ 3. A search incident to Paradis' arrest on February 7, 1985 failed to reveal Paradis' possession of the $8,000 that Special Agent Keaney had given Beliveau for the deal. Thus Keaney requested that a warrant be issued to search Paradis' house at RFD 2, Box 1, Jaime Drive. In support thereof he submitted the affidavit noted above. *Ante*, at 557–558. The district court issued the warrant, and the ensuing search turned up the $8,000 in official government funds earlier fronted to the Beliveaus. Also seized during the search were (1) a set of scale weights, a grinder/screen used to convert chunks of cocaine into powder, and a number of vials and other drug paraphernalia; (2) approximately two ounces of 76% pure cocaine contained in a plastic bag wrapped in a paper towel similar to the towel wrapped around the 8 ounces recovered from the Beliveaus' car; and (3) a purse with a ziplock plastic bag with .79 grams net weight of 79.4% pure cocaine. Appellant unsuccessfully asked the district court to hold a hearing to suppress the evidence under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

In *Franks*, the Supreme Court addressed the question whether a defendant had the right to challenge in a hearing the truthfulness of statements made in an affidavit supporting a search warrant. Such is possible, said the Court, but before a hearing is warranted the defendant has the burden of making a substantial preliminary showing (1) that a false statement in the affidavit has been made knowingly and intentionally, and (2) that the false statement is necessary for a finding of probable cause. *Id.* at 171–72, 98 S.Ct. at 2684–85. The *Franks* holding has been extended to affidavits plagued with material omissions. *See, e.g., United States v. Dorfman*, 542 F.Supp. 345, 367–68 (N.D.Ill.1982) (citing cases).

Appellant claims that several material facts were omitted from Special Agent Keaney's affidavit, *viz*: (1) the informant had charges pending in state court; (2) a plea agreement had been made with the informant in exchange for his cooperation; (3) the informant had a lengthy criminal record and history of mental illness; (4) Paradis' telephone number had *not* been recently changed and yet Norman Beliveau was quoted as having stated that he could not make a previously arranged telephone call because the source's number had changed; and (5) Beliveau used a circuitous route while going to Paradis' residence on February 7, 1985. Appellant claims that the district court erred in denying the *Franks* hearing and suppression because omitted facts (1) were serious enough to warrant a showing of government bad faith, and (2) were necessary for an adequate finding of probable cause. We disagree. Even if the omissions were knowingly and intentionally made, they were not necessary to sustain a finding of probable cause.

First, agent Keaney corroborated the information provided by the informant. Moreover, together with the information provided by surveilling officers, agent Keaney's observations reasonably implicated Paradis on the scheme. Thus, that the informant had a history of illness, a criminal record, pending criminal charges, etc., would not have resulted in a lack of probable cause. *See Marvin v. United States*, 732 F.2d 669 (8th Cir.1984); *United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir.), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1983). Second, that Beliveau followed a circuitous route while going to Paradis' residence on February 7, 1985, which Agent Keaney's affidavit characterized as a "wrong turn which took (Beliveau) several miles out of the way (before driving) to the residence of Ronald Paradis ...," would have supported a finding of probable cause, not detracted from it. *See, e.g., United States v. Moscatiello*, 771 F.2d 589, 596 (1st Cir.1985) (experienced narcotics agents are entitled to infer the usage of countersurveillance techniques relevant to a probable cause determination from a suspect's method of driving during a drug

transaction). Finally, that the affiant intentionally omitted Norman Beliveau's statement on October 23, 1984 that "his source had changed his number," while Paradis never changed his, does not affect the probable cause determination in the present case. The totality of circumstances pointed to Paradis as being Beliveau's source. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Consequently, we agree that Paradis was not entitled to a *Franks* hearing or suppression below.

4. Appellant's next claim of error refers to the district court's denial of a motion for judgment of acquittal under Fed.R.Crim.P. 29. Our review of the district court's decision to deny a motion for acquittal is quite limited; we must affirm unless the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt. *United States v. Gibson,* 726 F.2d 869, 872 (1st Cir.), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). Appellant argues that the evidence is insufficient to sustain the conspiracy conviction under 21 U.S.C. § 846 charged in Count 4 of the indictment. Count 4 reads in part:

> Between on or about October 19, 1984 and on or about February 7, 1985 ... the defendants Ronald Paradis, Norman Beliveau, Christine Beliveau, and Edna Vought did knowingly and willfully combine, conspire, confederate and agree together and with other diverse persons ... to possess, with intent to distribute, and to distribute a quantity of cocaine ... [a]ll in violation of Title 21, United States Code, Section 846.

For a defendant to be convicted of conspiracy under § 846, the government must prove the existence of a knowing agreement to act in violation of federal narcotics laws. *See United States v. Badolato,* 701 F.2d 915, 919–20 (11th Cir.1983). Paradis contends that the record is devoid of evidence demonstrating the requisite knowledge and agreement to violate the law. We disagree.

Existence of conspiratorial agreement may be established through circumstantial evidence, including inferences from conduct of alleged participants thereto. *United States v. Pintado,* 715 F.2d 1501, 1503 (11th Cir.1983) (per curiam). A defendant's knowing participation in the conspiracy may be established by proof of surrounding circumstances, such as acts committed by the defendant that furthered the purpose of the conspiracy. *United States v. Bain,* 736 F.2d 1480, 1485 (11th Cir.), *cert. denied,* 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984).

The evidence below included Beliveau's possession of approximately 8 ounces of 65% pure cocaine. An agreement to distribute may be inferred from a quantity of drugs larger than that needed for personal use, and eight ounces certainly surpasses the limits of personal use. *See, e.g., United States v. Castellanos,* 731 F.2d 979, 984–85 (D.C.Cir.1984) (possession of six ounces of cocaine supports inference of intent to distribute). Moreover, the purity level here amounts to one customarily possessed by wholesalers rather than users, further supporting the inference of an agreement to distribute. *See id.* This inference is strengthened by the seizure from Paradis' residence of drug paraphernalia and the pre-recorded buy money that Special Agent Keaney had given to Beliveau to buy drugs. *See id.; United States v. Esdaille,* 769 F.2d 104, 108–09 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985) (possession of pre-recorded money supports inference of intent to distribute). In sum, the evidence allows the finding that an agreement to distribute cocaine existed, as alleged in Count 4.

The record shows that Paradis joined this agreement to distribute. Indeed, Beliveau testified that Paradis sold him the cocaine. Although Beliveau stated that he never told Paradis that he planned to redistribute the drug, the jury was entitled to link Paradis to the conspiracy, since (1) he had possession of the 8 ounces of the 65% pure cocaine in the first place, and, in any event, (2) the government need not prove that a

defendant had knowledge of all details or phrases of the operation, and the defendant may well have played only a minor role.

█  Paradis argues that even if the record sustains his intent to distribute, the evidence does not reflect the one overall conspiracy charged, but two *separate* conspiracies, *viz*: October, 1984 and February, 1985. He contends (1) that he was unduly prejudiced by the weak evidence concerning his link to the October transaction, (2) that the jury would not have convicted him of the *first* conspiracy had the evidence of the February transaction not been presented, and (3) therefore, that reversal is warranted.

Even if we were to agree on the weakness of Paradis' link to the October transactions, Paradis still would not prevail. The record would still support the conviction under § 846 for the February scheme. Consequently, the district court properly denied the Rule 29 motion for judgment of acquittal.

█  5. Next, Paradis contends that the district court erred in admitting inadmissible hearsay through the informant's testimony. Specifically, he objects to the following line of questioning:

Q. Mr. Innie, a couple of brief questions for you. We listened to the tape, the first telephone conversation between you and the Beliveaus in the DEA office; is that correct?

A. Right.

Q. Do you recall in that asking whether or not this was coming from Kevin?

A. Yes.

Q. And Mr. Beliveau's response, do you remember what that was?

A. I think he told me that I knew where it was coming from.

Q. In fact, did you know where it was coming from?

A. Well, if, you know, if Norman was being honest with me, the only place it could have been coming from was his cousin.

Q. Norman said that's where it was coming from.

A. Well yeah, he told me that it was going to be coming from the day before.

Q. Did he ever refer to his source as anything other than his cousin to you in any conversations?

A. That's what he always said, his cousin.

Q. And did he ever give you a name for his cousin?

A. Roland.

Q. Excuse me?

A. Roland.

Q. Nothing further, your Honor.

Mr. Gordon: No questions, your Honor.

In appellants' view, the witness was unpermissibly testifying as to what the witness' opinion was concerning the source. He contends that the testimony violated Fed.R. Evid. 803(3).[2] Yet the witness was essentially referring to statements properly admitted under Fed.R.Evid. 801(d)(2)(E).[3] *See United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977). In any event, appellant failed to object below on the basis of Rule 803(3), and nothing here suggests he was deprived of a fair trial because of the portion of the informant's testimony noted

---

2. Rule 803. *Hearsay Exceptions; Availability of Declarant Immaterial*

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

.   .   .   .   .

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), *but not including a statement of* memory or *belief* to prove the

fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. (emphasis added).

3. Rule 801. *Definitions*

.   .   .   .   .

(d) Statements which are not hearsay. A statement is not hearsay if—

(2) ... The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

above. In view of the foregoing, Paradis claim must fail.

■■■ 6. Finally, Paradis objects to the government's comments during closing on the use of the informant as an investigatory tool in this case. He claims that reversible error was committed by the prosecutor inferring that appellant had the same sordid past as the informant.

Appellant made no objection to the prosecutor's comment below. Nor did he move for a new trial. He instead chose to respond in his own closing to the prosecutor's remarks. Accordingly, we limit our review of Paradis' claim to whether the government's comment amounted to plain error affecting the defendant's right to a fair trial. *See United States v. West*, 670 F.2d 675, 686 (7th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). Such is not the case here.

The prosecutor was simply responding to the defendants' attacks on the informant's credibility.[4] *See United States v. Maccini*, 721 F.2d 840, 846–47 (1st Cir.1983). Moreover, the remark at issue was an isolated utterance during the trial, and even government's counsel stated that his remarks at closing were not evidence. Viewed as a whole, we are satisfied that nothing here requires a new trial. *See United States v. Cox*, 752 F.2d 741, 745–46 (1st Cir.1985). Consequently, appellant's conviction should stand.

## II. Appellant Norman Beliveau

Appellant was convicted of (1) conspiracy to possess cocaine with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846; (2) possessing cocaine with intent to distribute, distributing cocaine, and aiding and abetting the possession of cocaine with intent to distribute and the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) knowingly and intentionally engaging in conduct, and attempting to engage in conduct, threatening to cause bodily injury to a government informant in retaliation for having given information relating to the commission of offenses under 21 U.S.C. to law enforcement officers, in violation of 18 U.S.C. § 1513. He was sentenced to a term of imprisonment of seven years and a seven-year special parole term.

1. Appellant first contends that the district court committed reversible error in denying a motion for severance under Fed. R.Crim.P. 14.

We review a trial court's denial of a severance motion for abuse of discretion and reverse only if denial deprived defendant of a fair trial, resulting in a miscarriage of justice. *United States v. Albert*, 773 F.2d 386, 388 (1st Cir.1985); *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.1983). Appellant complains that a miscarriage of justice occurred due to the antagonistic character of the defenses raised below.

■■■ The fact that two defendants assert antagonistic defenses does not *per se* require severance even if the defendants are hostile or attempt to cast the blame on each other. *United States v. Luciano-Pacheco*, 794 F.2d 7 (1st Cir.1986). To obtain severance on the grounds of conflicting defenses, a defendant has to demonstrate that the defenses are so irreconcilable as to involve fundamental disagreement over core and basic facts. *See id.* at 9. Beliveau argues that such is the case here because codefendant Paradis' counsel repeatedly suggested that appellant, not Paradis, was the one distributing drugs, and that, accordingly, Paradis lacked the necessary intent to distribute. We disagree.

Appellant argued that he was acting under the compulsion of duress, entrapment and "government overreaching." Thus, it was possible to reconcile the defenses raised below. The jury could have believed that Beliveau was, as allegedly asserted by Paradis, the main drug distributor, while simultaneously accepting Beliveau's view

---

4. The prosecutor essentially stated that the informant was just the sort of individual who could help the government, since he had been involved with drugs in the past. The defendants had presented evidence of the informant's criminal record and history of mental illness.

that he was distributing cocaine under threats and coercion by the government. Accordingly, we disagree that the defenses at issue were so mutually inconsistent as to require severance or a new trial. *Id.* at 9–10 (noting the absence of impermissible antagonism if jury could have believed defenses presented by both defendants).[5]

Beliveau's next claim of error concerns the district court's denial of a motion to sever the witness retaliation charges from those involving narcotics. While he does not argue that the joinder was improper, he contends that it resulted in "substantial prejudice," and that, therefore, the court's denial of the severance motion amounts to reversible error. Again we disagree.

Some specific showing of prejudice is necessary to gain severance. *See United States v. Cox, supra,* at 746. Yet Beliveau's contention reduces to a claim that the joinder below was inherently prejudicial and that the likelihood of acquittal would have increased had severance been granted. This clearly is insufficient to justify interfering with the district court's broad discretion in the area. *See, e.g., United States v. Palow, supra,* 777 F.2d at 56 (noting propriety of joinder if prejudice suffered is no greater " ... than that which necessarily inheres whenever multiple defendants or multiple charges are jointly tried."); *United States v. Carson,* 702 F.2d 351, 366 (2d Cir.) ("That the defendant would have had a better chance of acquittal at ... separate trial[s] does not constitute substantial prejudice."), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983); *accord: United States v. Thomas,* 610 F.2d 1166, 1169 (3d Cir.1979). Consequently, we see no merit in appellant's severance claim.

2. Finally, Beliveau argues that the record fails to sustain his conviction under 18 U.S.C. § 1513. Section 1513 requires proof of (1) knowing engagement in conduct; (2) either causing or threatening to cause, bodily injury to another person; (3) with intent to retaliate against any person for, *inter alia,* providing information relating to the commission of a federal offense. *United States v. Cummiskey,* 728 F.2d 200, 206 (3d Cir.1984), *cert. denied,* 471 U.S. 1005, 105 S.Ct. 1869, 85 L.Ed.2d 162 (1985). Count 6 reads:

On or about February 9, 1985, in the District of New Hampshire, Norman Beliveau, the defendant, did knowingly and intentionally engage in conduct and attempt to engage in conduct which threatened to cause bodily injury to one John Williams and one Patrick Inney, such conduct intended by the said Norman Beliveau to retaliate against Patrick Inney for providing information to Allan Keaney, a law enforcement officer, relating to the commission of Federal offenses pursuant to Title 21, United States Code, by Norman Beliveau, Christine Beliveau, Ronald Paradis, and Edna Vought. All in violation of Title 18, United States Code, Section 1513.

The government presented evidence that:

(1) Following his arrest on February 7, 1985, Beliveau began looking for the informant.

(2) On February 8, 1985, he warned the informant's roommate that the informant was "very well wanted," as he appeared to

---

5. Appellant presses that reversal is nonetheless required because the joint trial allegedly denied him the right to cross-examine his accusers. He complains that Paradis became a witness against appellant through the presentation by counsel of Paradis' case, and that since Paradis did not testify, the Sixth Amendment was violated in this case. Beliveau's challenge, however, amounts to a claim that Paradis' counsel's stand at trial was hostile to Beliveau's defense. Yet, as noted in the text, mere hostility between defendants during trial does not require reversal, and here the jury could well have believed that both Beliveau and Paradis were telling the truth. Thus, the hostility does not raise a cognizable claim justifying reversal. Moreover, while Paradis did not testify, no extrajudicial statement of his inculpating Beliveau was admitted in evidence. Consequently, no sixth-amendment concern was implicated by Paradis' failure to testify. *Cf. Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *see also United States v. Albert, supra,* at 388.

point what may have been a weapon inside his coat pocket.

(3) On February 9, 1985, he twice went to the residence of the informant's daughter and his former girlfriend, but no one was home.

(4) On February 9, 1985 at 11:30 PM, Beliveau and another man barged into that apartment, occupied by Susan Dennis, her boyfriend John Williams, and the little girl, asking if they had seen Patrick Inney (the informant).

(5) Beliveau backed Williams up against the wall and stuck, what Williams believed at the time was a gun, into his ribs as he stood chest to chest leaning on Williams.

(6) Appellant told Susan Dennis that he would not harm her, but he was not sure of the other people, and that he could not speak for his friends.

(7) When Williams finally stated that he thought Inney was in California, Beliveau stated that if Inney thought he could go there, he was wrong.

Viewed in the light most favorable to the government, the foregoing facts could have warranted a finding that, as alleged in the indictment, Norman Beliveau threatened to cause injury in retaliation for the informant having given information to the DEA.

Appellant nonetheless claims that the evidence is insufficient because (1) he did not have a hidden gun, but a hidden beer bottle when he went to Williams' apartment at 11:30 PM; (2) nothing threatening was said toward the informant; (3) Williams backed up against the wall because the apartment was small; (4) Beliveau came up against Williams because of the small space in the doorway; and (5) Beliveau drank beer with Williams while he was in the apartment. Thus, he urges that the evidence fails to establish the scenario of threatening conduct necessary to sustain convictions under § 1513. Unfortunately for appellant, however, whether the statements made and acts engaged in amount to threatening conduct is a question of fact for the jury. *See United States v. Carrier*, 672 F.2d 300, 306 (2d Cir.), *cert. denied*, 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). And, the jury was warranted in rejecting appellant's view. Consequently, nothing here justifies setting aside appellant's conviction under Section 1513.

III.  Appellant Christine Beliveau

Appellant was convicted of (1) conspiring to possess cocaine with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846, and (2) possessing cocaine with intent to distribute, distributing cocaine, and aiding and abetting the possession of cocaine with intent to distribute and the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. She was sentenced to a two-year term of imprisonment and a three-year special parole term.

1.  Appellant first contends that evidence at trial was insufficient to sustain her guilt beyond a reasonable doubt. She argues that all the evidence did was to show that she was a mere bystander to the drug transactions at issue.

Viewed in the light most favorable to the government, *United States v. Carbone*, 798 F.2d 21, 27 (1st Cir.1986), the evidence of appellant's participation was sufficient to justify the jury finding her guilty as charged. The record shows Christine Beliveau's presence with her husband, codefendant Norman Beliveau, on every occasion in which it was documented that the latter participated in a drug transaction, negotiation or discussion. She accompanied her husband during the buying trips to the Paradis' residence. Also, she advised the undercover DEA agent not to be concerned about police cruisers in the parking lot where the Beliveaus gave to Special Agent Keaney the cocaine bought from Paradis when Keaney expressed concern about police presence in the area. When the informant called the Beliveaus on February 5, 1985 to discuss the February 7th deal, Christine answered the phone and initially chatted with the informant until Inney stated that he was at "Dennis" (the code name for Special Agent Keaney), at which point she stated "Oh, so you want to

talk to Norman." Moreover, it was appellant who drove the Beliveau's car to Paradis' residence and back to the parking lot using countersurveillance techniques on February 7, 1985. In short, the evidence shows much more than an innocent bystander, but an active participant in the cocaine distribution scheme. *See, e.g., United States v. Paone,* 758 F.2d 774, 776 (1st Cir.1985) (a defendant's repeated presence at important junctures of a drug deal justifies a finding that appearances are not coincidental, and that defendant is a participant seeking to bring about the drug deal).

2. Appellant nonetheless claims that she suffered from "agoraphobia" and felt a compulsion to be close to her husband at all times.[6] She argues that the jury should have been given the opportunity to hear the testimony of her therapist in this regard, but that the district court prohibited her from presenting this testimony below. As the testimony was relevant to her case, appellant argues that the court erred in not admitting the expert's testimony, and that the court's failure impermissibly prejudiced her defense. We disagree.

For one thing, the district court excluded testimony at issue because of appellant's failure to comply with Fed.R.Crim.P. 12.-2(b) and 12.2(d).[7] It is undisputed (1) that appellant failed to comply with the timely notice requirements of R. 12.2, and (2) that no showing of good cause was made as required by the rule. Thus, we cannot fault the district court for having refused to allow appellant to read the therapist's deposition to the jury. *See United States v. Goguen,* 723 F.2d 1012, 1022 (1st Cir. 1983). For another thing, the record shows

that the jury was made aware of appellant's phobias through the testimony of other witnesses, *viz*: Norman Beliveau, the arresting officers, and Susan Dennis (a defense witness). We are satisfied that the jury could not have ignored the essence of the therapist's testimony in assessing appellant's guilt.

Finally, appellant urges reversal because of ineffective assistance of counsel. To obtain a reversal on this basis, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the factfinder would have had a reasonable doubt respecting guilt. *United States v. Palow, supra,* at 57. We are satisfied that there would not have been reasonable doubt regarding appellant's guilt had counsel acted differently in the instant case. Appellant's main argument in this regard refers to counsel's failure to secure the admission in evidence of the therapist's testimony on Christine Beliveau's "agoraphobia." As noted above, however, the jury was made aware of this issue through the testimony of other witnesses. Thus, nothing here justifies a new trial.

In view of the foregoing, appellants' convictions should stand.

*Affirmed.*

6. Appellant defines agoraphobia as "attacks of anxiety produced by crowded places."

7. Rule 12.2. *Notice of Insanity Defense or Expert Testimony of Defendant's Mental Condition*

(b) *Expert Testimony of Defendant's Mental Condition.* If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his guilt, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the

attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(d) *Failure To Comply.* If there is a failure to give notice when required by subdivision (b) of this rule ... the court may exclude the testimony of any expert witness offered by the defendant on the issue of his guilt.