UNITED STATES, Appellee,

v.

Terryl GEER, a/k/a Terry Geer,
Defendant, Appellant.

No. 90–1250.

United States Court of Appeals,
First Circuit.

Submitted Nov. 13, 1990.

Decided Jan. 9, 1991.

Thomas A. Grasso, on brief, for appellant.

Jeffrey R. Howard, U.S. Atty., and Jean B. Weld, Asst. U.S. Atty., on brief, for appellee.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

PER CURIAM.

The appellant, Terryl Geer, was convicted in the District of New Hampshire of conspiring to distribute (and to possess with intent to distribute) cocaine and hashish, in violation of 21 U.S.C. § 846 and § 841(a)(1), and traveling in interstate commerce with intent to promote, manage, establish, carry on and facilitate an unlawful activity, in violation of 18 U.S.C. § 1952. The district court sentenced Geer to a term of ten years in prison on the first count, and a concurrent term of four years' imprisonment on the second count.

Geer raises three issues on appeal: (1) that the evidence was insufficient to support his conviction on the first count, and that the district court therefore committed error when it denied Geer's motion for a judgment of acquittal under Fed.R.Crim.P. 29, (2) that the district court erred in admitting certain testimony from a government informant named Richard Brunelle, and (3) that the pre-sentence report prepared by the government's Probation Office "is re-

plete with insinuations, accusations, innuendoes and recriminations ... which should not have been considered by the trial judge because of their derogatory and nefarious connotations." We see no merit in the appellant's arguments and affirm the conviction, but, for the reasons stated below, we remand the matter so that the district court can comply fully with Fed.R.Crim.P. 32(c)(3)(D).

### 1. *The Sufficiency of the Evidence*

■ In reviewing a Rule 29 motion we "consider the evidence as a whole taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982). We do not deal directly with the credibility of the witnesses who gave the evidence, since "[c]redibility is an issue to be resolved by the jury and the court must defer to the jury's findings." *United States v. Garcia*, 905 F.2d 557, 560 (1st Cir.1990).

■ When the charge is a conspiracy to violate the drug laws, 21 U.S.C. § 846, "the government must present clear evidence sufficient to establish beyond a reasonable doubt that an agreement to commit the substantive offense actually existed, and that the individual defendant knew of the agreement, had intent to agree, and had intent to commit the substantive offense." *United States v. Lopez–Pena*, 912 F.2d 1536, 1537 (1st Cir.1989). The agreement, however, may be express or tacit, and may be proven by circumstantial as well as direct evidence. "It is not necessary that the government prove that the defendants knew all of the details of the conspiracy and the participation of others. All that is required is to show the essential nature of

the plan and their connections with it." *United States v. Rivera–Santiago*, 872 F.2d 1073, 1079 (1st Cir.1989).

■ Geer was charged with conspiring to violate 21 U.S.C. § 841(a)(1), which prohibits the manufacture, distribution and dispensation of illegal drugs. On the basis of the evidence presented, a reasonable jury could have found that Geer deliberately joined and was an integral part of a drug distribution conspiracy. The conspiracy had at least four members: Geer, Kenneth Blaha, John Witkum and Jean Marie Lemieux.[1] Lemieux, who lived in Massachusetts, was the supplier. He transferred cocaine, in half-kilogram and kilogram loads, to Witkum. Witkum and Blaha acted as middle men, transporting the cocaine from Massachusetts to Geer's home in New Hampshire.[2] Upon receipt of each shipment, Geer tested the cocaine for purity and, if he accepted delivery, paid the agreed price. Geer generally paid $22–24,000 for a half-kilogram shipment, and as much as $44,000 for a kilogram load. Witkum and Blaha took a cut for their services, and Witkum delivered the balance to Lemieux. Geer and Lemieux, consequently, never met, nor did they learn each other's names, but each certainly was aware of the other's existence and role in the conspiracy.

The conspirators followed this routine on a sporadic but continuing basis from March or April 1986 through the latter part of 1987, when Geer left New Hampshire. In total, Geer purchased some thirteen or fourteen kilograms of cocaine from Lemieux through Witkum and Blaha. He resold at least some of the cocaine on a retail basis, in amounts ranging from a sixteenth-ounce to a full ounce.

A reasonable jury could also have concluded that Geer conspired with Witkum, Blaha, Lemieux and others to sell a large

---

**1.** The most probative evidence of guilt at Geer's trial came from the testimony of Witkum and Lemieux, both of whom had already pleaded guilty to drug charges and were awaiting sentencing. The third conspirator, Kenneth Blaha, was indicted along with Geer but died in an auto accident on the day the grand jury handed down the indictment.

**2.** On one occasion at the outset of the conspiracy, Geer traveled with Witkum and Blaha to Massachusetts to receive a shipment of cocaine. This transaction formed the basis for Geer's conviction on count two of the indictment.

quantity of hashish. On this occasion, the drugs were to flow in the opposite direction: Geer would supply and Lemieux, through Witkum and Blaha, would buy. Richard Brunelle, Geer's acquaintance and retail cocaine customer, had a connection who wanted to sell as many as one thousand kilograms of hashish in a single wholesale load. Geer thought that his cocaine supplier (that is, Lemieux) would be interested, and asked Witkum and Blaha to act as middle men. Witkum and Blaha actually went so far as to deliver a sample of the hashish to Lemieux, but the deal fell through when the parties could not agree on a price.[3]

The evidence thus was more than sufficient to convict Geer on the conspiracy count. The jury could infer the fact of a conspiracy to distribute drugs from the quantities of cocaine and hashish involved—quantities far larger than needed for personal use. *United States v. Paradis*, 802 F.2d 553, 560 (1st Cir.1986). Geer's connection with the conspiracy—his agreement to participate and his intent to commit the substantive offense—could hardly be more apparent: he accepted large quantities of drugs on a continuing basis from a single supplier, and "turned around" at least some of those drugs for sale in smaller quantities. Though he dealt only with Witkum and Blaha, Geer clearly was aware that he occupied a vital link on a distribution chain that stretched from Lemieux's wholesale connections to Geer's retail customers. *See United States v. Rivera–Santiago*, 872 F.2d 1073, 1079 (1st Cir.1989).

Geer's principal argument on appeal is that the evidence showed, at most, that Geer was involved in "several independent narcotics transactions," and that the government attempted to show his involvement in a conspiracy by engaging in the impermissible practice of "piling inference upon inference." We have held, in *United States v. DeLutis*, 722 F.2d 902, 905–06 (1st Cir.1983), for example, that proof of agreement in a larger conspiratorial

scheme ordinarily cannot be supplied by inference from one isolated act, such as a single sale of drugs. In *DeLutis*, government agents had arrested a drug conspirator just after she received a large shipment of cocaine; they were searching her home when DeLutis called, asking whether "the stuff" was ready. The government agents agreed that the stuff was indeed ready, invited DeLutis to the conspirator's house, and arrested him when he arrived.

We reversed DeLutis' conspiracy conviction, finding that one could conclude that he was a conspirator only by piling "inference upon inference", starting with fact—DeLutis' arrival at the conspirator's house—but proceeding to make a series of unfounded deductive leaps for which no evidence existed: that the conspirator intended to sell DeLutis a large, distribution-weight, quantity of cocaine; that DeLutis intended to buy such a quantity; and that DeLutis thus came to the conspirator's house to buy drugs for resale and not for his own use. *Id.* at 907.

Geer confuses the "piling of inferences," as was done in *DeLutis*, with what we might call the "piling of evidence" done here to create a single, virtually inescapable inference of conspiracy. The evidence showed not a single transaction involving Geer, but many transactions; it showed that Geer was not a tangential acquaintance of the conspiracy, but an integral member. Geer would have us look at a series of related drug transactions, which proceeded on a common plan and for a common purpose over a long period of time, yet see only isolated, "independent" events. This we will not do. As we have said before, "a defendant cannot escape conviction by dividing the evidence into separate single transactions, each of which is an insufficient basis for inferring that an agreement exists." *United States v. Lopez–Pena*, 912 F.2d at 1538.

---

**3.** Geer also tried to work out a hashish transaction with a different supplier—who as it happened was an undercover narcotics agent for the New Hampshire State Police. This deal also fell through when the narcotics agent, following government policy, refused to part with a sample of the drug.

## 2. Contested Evidence

▮ Richard Brunelle, who was a government informant as well as an acquaintance and customer of Geer's, testified on direct examination that Geer once gave him $32,000 in cash for an unspecified purpose. Geer's trial counsel did not object to this testimony, since it is "common ground that the possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking is generally relevant and admissible." *United States v. Newton*, 891 F.2d 944, 948 (1st Cir.1989). *See also United States v. Ariza-Ibarra*, 605 F.2d 1216, 1224–25 (1st Cir. 1979).

Trial counsel did, however, object to the following exchange between Brunelle and the prosecutor:

Q: And what was the purpose of the $32,000? And before you answer that, don't get into any drugs other than cocaine and hashish, since those are the only drugs that are in our indictment.

A: All right. Well, then I can't answer that then.

▮ Geer contends that Brunelle's answer to the prosecutor's question, while falling short of express testimony that Geer trafficked in drugs other than cocaine and hashish, clearly implied that he had done so, and thus constituted impermissible "character" testimony regarding Geer's propensity for engaging in drug transactions. Fed.R.Evid. 404(a). Evidence of a defendant's "prior bad acts," however, is admissible if offered for purposes other than proof of the defendant's character. Fed.R.Evid. 404(b) provides that such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," and we have said that the use of "bad acts" evidence "is not limited to those uses listed in the rule." *United States v. Walters*, 904 F.2d 765, 768 (1st Cir.1990). The trial court's discretion in this area is broad, and we will reverse only in "exceptional circumstances." *Id.*

These are not such circumstances. We note first that the challenged testimony was only obliquely concerned with "bad acts" other than those charged in the indictment. Brunelle did *not* testify to transactions in drugs other than cocaine or hashish; thus, Geer's argument that Brunelle's exchange with the prosecutor fatally tainted the trial is attenuated at best. Even if it did create an inference that Geer dealt in drugs that were not mentioned in the indictment, the testimony remained admissible. Brunelle, as noted above, was an informant who testified, among other things, that he set up the meeting between Geer and a New Hampshire State Police narcotics agent at which Geer negotiated unsuccessfully for the purchase of a large quantity of hashish. *See* footnote 3, *supra.* Brunelle's testimony about his other dealings with Geer therefore was admissible because, if nothing else, it "tended to show the basis for [Geer's] trust of the informant," *United States v. Harris*, 733 F.2d 994, 1006–07 (2d Cir.1984), and thus bolstered the credibility of Brunelle's testimony about that meeting. *See also United States v. Kalaydjian*, 784 F.2d 53, 56 and n. 3 (2d Cir.1986).

▮ Geer also challenges Brunelle's testimony, on redirect examination, that Geer once threatened Brunelle with a gun. Since Geer did not object to this testimony at trial, our review is limited to examining the record for "plain error." We will "correct only 'particularly egregious errors' ... that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). *See also United States v. Munson*, 819 F.2d 337, 340–41 (1st Cir.1987).

We see no "plain error." We agree that the challenged testimony was in all likelihood not properly admitted.[4] A reviewing

---

4. The government contends that Brunelle's testimony was admissible "in response to a line of cross-examination ... during which Brunelle [testified] that he was often placed in life threatening situations." According to the government, it therefore "was proper redirect for the

court, however, cannot evaluate a claim of plain error in the admission of evidence "except by reviewing [it] against the entire record." *United States v. Vest,* 842 F.2d 1319, 1326 and n. 4 (1st Cir.1988). Here, the evidence against Geer on both counts was more than sufficient to support the jury's verdict, and we do not see how Brunelle's brief testimony about a threat from Geer—buried as it was within a record burgeoning with admissible evidence of Geer's culpability—could have infected the trial with prejudice. In short, Brunelle's testimony was not "such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Id.*

3. *Allegations in the pre-sentence report*

 Geer claims that the "pre-sentence report is replete with insinuations, accusations, innuendoes and recriminations concerning the alleged and unconvicted criminal acts by the Defendant which should not have been considered by the trial judge because of their derogatory and nefarious connotations." We note, however, that the district court has "almost unfettered discretion in determining what information it will hear and rely upon in sentencing deliberations." *United States v. Baylin,* 535 F.Supp. 1145, 1151 (D.Del. 1982). Geer's sole interest is the right not to be sentenced on the basis of inaccurate or unreliable information, or groundless inferences, *United States v. Lopez,* 898 F.2d 1505, 1512 (11th Cir.1990), but even in this regard "the sentencing judge has broad discretion to decide for himself not only the relevance but also the reliability of the sentencing information." *United States v. Tracey,* 675 F.2d 433, 441 (1st Cir.1982) quoting *United States v. Morgan,* 595 F.2d 1134, 1138 (9th Cir.1979). We see no abuse of discretion here. The challenged information either was supported by evidence in

the trial record or, in the case of a prior drunk-driving conviction, the appeal of which was still pending when Geer was sentenced, was redacted from the pre-sentence report.

4. *Compliance with Fed.R.Crim.P. 32(c)(3)(D)*

 Geer filed objections to the pre-sentence report, challenging, among other things: (1) various "vague and inflated" factual allegations in the part of the report that recounted the conspiracy and Geer's role in it, (2) the allegation that Geer's crimes involved fourteen kilograms of cocaine, and (3) the allegation that Geer once used a weapon in an unlawful manner (i.e. to threaten Richard Brunelle). Consequently, the district court was required, under Fed.R.Crim.P. 32(c)(3)(D), either to make a finding as to each matter controverted, or to determine that no such finding was necessary because the matter controverted was not taken into account in sentencing. In addition, a "written record of such findings and determinations [should have been] appended to ... the presentence investigation report...."

We have in the past insisted on literal compliance with this rule, *United States v. Hanono–Surujun,* 914 F.2d 15, 18–19 (1st Cir.1990), if for no other reason than because the pre-sentence report is a document that will follow the defendant throughout the term of his sentence, and will be heavily relied on by prison officials "in making critical determinations relating to custody or parole." *Id.* at 19, quoting *United States v. Jimenez–Rivera,* 842 F.2d 545, 550–51 (1st Cir.), *cert. denied* 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 917 (1988).

As far as the record shows, the district court here did not append the requisite

---

government to clarify for the jury that the defendant Geer was one of the narcotics associates of which Brunelle was in fear." While it is true that a trial court may allow testimony on redirect examination to clarify an issue that was opened up by the defense on cross-examination, even when this evidence was otherwise inadmissible, *see United States v. Braidlow,* 806 F.2d 781, 783 (8th Cir.1986), clarification was unnec-

essary here and was not provided by Brunelle's testimony on redirect. Brunelle had already testified on cross-examination that the "life threatening situations" he referred to were caused by his inability to control his own drug habit. It therefore was clear that the cross-examination did not "open up" an issue about Brunelle's fear of his drug associates.

written record of its findings or determinations about the contested matters in the pre-sentence report. Whether the district court saw need to resolve those matters and, if so, how it resolved them, are not idle questions. The district court sentenced Geer under the version of section 846 that was in force in 1986 and 1987, according to which "a drug conspiracy had the same statutory maximum but not the mandatory minimum punishment applicable to the offense which was the conspiratorial objective." *United States v. Robinson,* 883 F.2d 940 (11th Cir.1989) (per curiam). *See also United States v. Brown,* 887 F.2d 537, 541 (5th Cir.1989); *United States v. Campbell,* 704 F.Supp. 661, 663–65 (E.D. Va.1989). The district court, therefore, was not *required* to sentence Geer to ten years in prison, even if it found that he had conspired to traffic in more than five kilograms of cocaine.[5] *See* 21 U.S.C. § 841(b)(1)(A)(ii) (minimum mandatory sentence of ten years for violation of section 841(a) that involved five kilograms or more of cocaine). Since the district court could have imposed a more lenient sentence, its position on the contested matters in the pre-sentence report is at least potentially relevant, and its compliance with Rule 32(c)(3)(D) was not a merely ministerial task.

We think it necessary, therefore, to remand the matter to the district court so that it can comply with Rule 32(c)(3)(D). We do not order a new sentencing hearing at this time. If the district court did not rely on the disputed information, it should make that determination in writing and append it to the presentence report, and the matter will end there. If the court did rely on the information, however, it must either append written findings which show how it resolved the disputes or, if it did not resolve them, vacate the sentence and hold a new sentencing hearing in compliance with the rule. *See United States v. Lyons,* 898 F.2d 210, 217 (1st Cir.1990).

We therefore *affirm* the conviction, but *remand* so that the district court may comply with Rule 32(c)(3)(D).

---

**5.** The amount of cocaine involved in Geer's transgressions was one of the matters contested in Geer's objections to the presentence report.