February 8, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1512

UNITED STATES,

Appellee,

v.

VINCENT M. PORTALLA, a/k/a
VINCENT MARINO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Breyer, Chief Judge,

Bownes, Senior Circuit Judge,

and Selya, Circuit Judge.

Marielise Kelly with whom Edward R. Gargiulo, by Appointment of

the Court, and Gargiulo, Rudnick & Gargiulo were on brief for

appellant.
Carole S. Schwartz, Special Assistant United States Attorney,

with whom A. John Pappalardo, United States Attorney, was on brief for

appellee.

February 8, 1993

1

BREYER, Chief Judge. Vincent M. Portalla, also

known as Vincent Marino, appeals from a decision of the

federal district court revoking his term of "supervised

release," (related to a previous conviction for illegal gun

possession) and ordering him to return to prison for an

additional two years. See 18 U.S.C. 3583; U.S.S.G.

7B1.3-1.4, p.s. The court revoked Marino's supervised

release because it found that Marino had violated two

important supervised release "conditions": (1) the condition

that he not commit further crimes; and (2) the condition

that he not associate with other convicted felons. Marino

claims that the district court's factual findings lack

adequate support in the record.

The parties agree, as they must, that in

revocation proceedings (1) the court must find facts by a

"preponderance of the evidence," 18 U.S.C. 3583(e)(3); (2)

the evidence need not satisfy the tests of admissibility set

forth in the Federal Rules of Evidence, which do not apply,

see U.S.S.G. 6A1.3; Fed. R. Evid. 1101 (d)(3); but (3)

evidence that does not satisfy those Rules must nonetheless

be reliable. See U.S.S.G. 6A1.3; United States v. Geer,

923 F.2d 892, 897 (1st Cir. 1991). Moreover, on appeal, we

consider the evidence in the light most favorable to the

government, see United States v. Manning, 955 F.2d 770, 773

(1st Cir. 1992), and we recognize the district court's broad

legal power to determine witness credibility, see United

States v. Resurreccion, 978 F.2d 759, 761 (1st Cir. 1992).

Applying these standards to the record before us, we cannot

accept appellant's arguments.

First, the district court found that, on January

30, 1992, Marino, with two other men, unlawfully conspired

to sell cocaine to undercover Boston police officers.

Marino, in effect, concedes for purposes of this appeal that

on January 30, 1992, Boston Police Detective Charles Wilson

called a phone number (257-6673) and said "Batman, I need

one." Marino also effectively concedes that, as a result of

this call, two men, Michael Oboardi (whom Marino knew to be

a felon) and Dennis Othmer, appeared at a parking lot and

gave waiting Boston police officers cocaine in exchange for

cash. Marino denies, however, that he was "Batman." He

says that the evidence is not sufficient to show that when

Wilson called 257-6673, it was he, Marino, at the other end

of the line.

The evidence on which the court relied in reaching

the determination that Marino was the person called amounts

to the following:

-3-
3

(1) Detective Wilson testified that he recognized
Marino's voice. Wilson had not spoken to Marino
for two years, but he previously had spoken to him
frequently (thirty to forty times over six to
seven years).

(2) About ten days later Wilson again called the
same number. He addressed the person who answered
as "Gigi." Wilson testified that the person on
the other end of the line continued a normal
conversation, apparently accepting the "Gigi"
designation. "Gigi" is Marino's nickname. Wilson
added that he again recognized Marino's voice.

(3) Marino's "sister-in-law" (i.e. the sister of
the women with whom Marino lives, who is the
mother of his child) rented a Motorola cellular
telephone with the critical phone number (257-
6673).

(4) When police officers arrested Marino they
found in his possession the same model Motorola
cellular phone that Marino's "sister-in-law" had
rented (though its serial number had apparently
been removed).

Marino argues that key portions of the evidence,

namely the phone conversations, involve hearsay; that (in

light of a history of police harassment) we must consider

the "hearsay" unreliable; and that, without the hearsay, the

evidence is inadequate. Marino is wrong about calling the

evidence "hearsay," for the statements spoken at the other

end of the phone were not admitted for their truth, but to

prove that Marino was the speaker. See Fed. R. Evid.

801(c). We cannot say the district court committed legal

error in crediting Detective Wilson's testimony identifying

-4-
4

Marino's voice. See United States v. Geer, 923 F.2d at 897

("[T]he sentencing judge has broad discretion to decide for

himself not only the relevance, but also the reliability of

the sentencing information." (citation omitted)). The

evidence, we agree, might well have been stronger. But,

given Wilson's long acquaintance with Marino, voice

recognition was not impossible. That recognition together

with (1) the nickname, (2) the "sister-in-law's" phone

rental, and (3) Marino's possession of a similar phone in

our view is sufficient to meet the "preponderance of the

evidence" standard. Cf., United States v. Angiulo, 847 F.2d

956, 967 (1st Cir.) (holding that voice identification

together with circumstantial evidence was sufficient for

jury to conclude that defendant participated in

conversation), cert. denied, 488 U.S. 928 (1988). As we

have said, Marino does not deny that the person at the other

end of the line ("Batman") facilitated the drug sale, nor

does he deny that one of the persons with whom "Batman"

"associated" in committing his crime (Michael Oboardi) was a

felon. The record thus contains sufficient evidence to

support the district court's finding that Marino had

participated in the drug conspiracy and associated with a

known felon.

-5-
5

Second, the district court found that Marino had

committed another crime on February 5, 1992, by assaulting

Dennis Caldarelli with a gun. The evidence before the court

consisted primarily of the following:

(1) State Trooper Thomas Flaherty testified that
at about 3:30 a.m. on that day, Caldarelli arrived
at Flaherty's cruiser, parked at a construction
site at the Callahan Tunnel. Caldarelli was upset
and had a bruise on the side of his face.
According to Flaherty, Caldarelli told him that
Marino (in a car with another man) had chased
Caldarelli's car and forced it off the road (the
curb blowing out two of its tires). Caldarelli
also stated that Marino had asked him to get into
Marino's vehicle; that, once inside the vehicle,
Marino had accused him of providing information to
the police regarding the shooting of Salemme and
had struck him several times on the side of the
head with a pistol; and that, while Caldarelli was
running away, Marino had fired several shots at
him.

(2) The record of Marino's original conviction for
gun possession in 1989 (upon which the district
court relied) showed that Marino had been a
suspect in the shooting of Salemme.

(3) State Trooper Stephen McDonald testified that
Caldarelli had actually made two visits to the

Callahan tunnel construction site on the morning
in question (the first after he had been run off
the road and the second after the pistol-whipping
incident).

First, at about 2:15 a.m., Caldarelli had
driven up to McDonald's cruiser with two flat
tires, which Caldarelli said were caused by his
having driven over a traffic island. After
speaking to McDonald, Caldarelli drove the car
into the North End to park it, until he could fix
the tires.

-6-
6

Second, Caldarelli returned to the tunnel on
foot and spoke with Trooper Flaherty. (McDonald
testified that he saw this occur about five to ten
minutes after Caldarelli drove into the North End,
though Flaherty testified that it happened at
about 3:30 a.m.) According to Trooper McDonald,
on Caldarelli's second visit to the construction
site, in addition to telling his story to Trooper
Flaherty, Caldarelli explained to Trooper McDonald
that his initial tire blow out had occurred
because he had been trying to escape Marino, who
had been shooting at his car. When Trooper
McDonald asked Caldarelli why he had not told him
about the shooting when they first spoke (before
the alleged pistol whipping incident) Caldarelli
replied that he had been too scared to tell the
truth.

(4) Trooper McDonald placed a call on his radio to
the Boston Police. Boston Police Officers Donald
Lee and Christopher Boyle responded to the call.
Lee testified that when they arrived, Caldarelli
described to them both Marino's having shot at
Caldarelli's car (forcing him over a traffic
island) and Marino's later having pistol-whipped
him, accused him of being "with Salemme," and shot
at him again as he was fleeing. Officer Boyle
offered substantially similar testimony. They
both noticed a red bruise on the side of
Caldarelli's head.

Marino points out that at the revocation hearing

Caldarelli essentially denied these events. Caldarelli

conceded that the side of his head was bruised, but said

that an unknown person had "sucker-punched" him. Marino

adds that the hearsay evidence to the contrary (Caldarelli's

statements to the State Troopers and Boston Police Officers)

was not sufficiently reliable to warrant the court's

findings.

-7-
7

We agree with Marino that the statements of

Caldarelli to State Troopers Flaherty and McDonald and

Boston Police Officers Lee and Boyle are hearsay, though

they might well be admissible in ordinary court proceedings

as "excited utterances." See Fed. R. Evid. 803(2).

Regardless, there are considerable indicia of reliability

supporting the officers' statements, such as their detail,

the undenied bruises, and the flat tires. Also, there are

plausible reasons for Caldarelli's later change of heart,

namely the fear that Marino might retaliate if Caldarelli

testified against him (just as Marino was alleged to have

done regarding the Salemme shooting). Marino, in effect,

says that the officers made up this story as part of an

effort to harass him. But, the record does not warrant such

a conclusion -- indeed it suggests that Troopers Flaherty

and McDonald knew neither Marino nor Officers Boyle and Lee

-- and there is nothing here that would warrant a highly

unusual appellate court disregard of a district court's

credibility determination.

Finally, Marino argues that the district court

should not have admitted the record related to his prior

conviction. He says that to do so is to admit a "past bad

act" and, therefore, to violate normal evidentiary rules

-8-
8

that keep such matters out of criminal trials. Fed. R.

Evid. 404(b). The Federal Rules of Evidence, however, do

not apply in this case. See U.S.S.G. 6A1.3; Fed. R. Evid.

1101(d)(3). And, in any event, the principles they embody

make such evidence inadmissible only when its object is to

show a propensity to commit crimes or, essentially, to help

a fact finder reason "he did it before, so he'll do it

again." See Fed. R. Evid. 404(b) ("Evidence of other

crimes, wrongs, or acts is not admissible to prove the

character of a person in order to suggest action in

conformity therewith."). Such evidence is admissible,

however, for "other purposes," such as to show, as here, a

defendant's "motive" for a crime, id.; or why other

witnesses (here the victim) might be lying at trial, cf.

United States v. Dennis, 625 F.2d 782, 800 (8th Cir. 1980)

("Prior acts evidence . . . is admissible to show victim's

fear . . . ."). We find nothing improper in using the

earlier evidentiary record as it was used in this case.

The judgment of the district court is

Affirmed.

-9-
9