USCA1 Opinion

 

 February 8, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1512 UNITED STATES, Appellee, v. VINCENT M. PORTALLA, a/k/a VINCENT MARINO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ ____________________ Marielise Kelly with whom Edward R. Gargiulo, by Appointment of ________________ __________________ the Court, and Gargiulo, Rudnick & Gargiulo were on brief for _______________________________ appellant. Carole S. Schwartz, Special Assistant United States Attorney, ___________________ with whom A. John Pappalardo, United States Attorney, was on brief for __________________ appellee. ____________________ February 8, 1993 ____________________ 1 BREYER, Chief Judge. Vincent M. Portalla, also ___________ known as Vincent Marino, appeals from a decision of the federal district court revoking his term of "supervised release," (related to a previous conviction for illegal gun possession) and ordering him to return to prison for an additional two years. See 18 U.S.C. 3583; U.S.S.G. ___ 7B1.3-1.4, p.s. The court revoked Marino's supervised release because it found that Marino had violated two important supervised release "conditions": (1) the condition that he not commit further crimes; and (2) the condition that he not associate with other convicted felons. Marino claims that the district court's factual findings lack adequate support in the record. The parties agree, as they must, that in revocation proceedings (1) the court must find facts by a "preponderance of the evidence," 18 U.S.C. 3583(e)(3); (2) the evidence need not satisfy the tests of admissibility set forth in the Federal Rules of Evidence, which do not apply, see U.S.S.G. 6A1.3; Fed. R. Evid. 1101 (d)(3); but (3) ___ evidence that does not satisfy those Rules must nonetheless be reliable. See U.S.S.G. 6A1.3; United States v. Geer, ___ _____________ ____ 923 F.2d 892, 897 (1st Cir. 1991). Moreover, on appeal, we consider the evidence in the light most favorable to the government, see United States v. Manning, 955 F.2d 770, 773 ___ _____________ _______ (1st Cir. 1992), and we recognize the district court's broad legal power to determine witness credibility, see United ___ ______ States v. Resurreccion, 978 F.2d 759, 761 (1st Cir. 1992). ______ ____________ Applying these standards to the record before us, we cannot accept appellant's arguments. First, the district court found that, on January 30, 1992, Marino, with two other men, unlawfully conspired to sell cocaine to undercover Boston police officers. Marino, in effect, concedes for purposes of this appeal that on January 30, 1992, Boston Police Detective Charles Wilson called a phone number (257-6673) and said "Batman, I need one." Marino also effectively concedes that, as a result of ______________ this call, two men, Michael Oboardi (whom Marino knew to be __________ a felon) and Dennis Othmer, appeared at a parking lot and gave waiting Boston police officers cocaine in exchange for cash. Marino denies, however, that he was "Batman." He says that the evidence is not sufficient to show that when Wilson called 257-6673, it was he, Marino, at the other end __ of the line. The evidence on which the court relied in reaching the determination that Marino was the person called amounts to the following: -3- 3 (1) Detective Wilson testified that he recognized Marino's voice. Wilson had not spoken to Marino for two years, but he previously had spoken to him frequently (thirty to forty times over six to seven years). (2) About ten days later Wilson again called the same number. He addressed the person who answered as "Gigi." Wilson testified that the person on the other end of the line continued a normal conversation, apparently accepting the "Gigi" designation. "Gigi" is Marino's nickname. Wilson added that he again recognized Marino's voice. (3) Marino's "sister-in-law" (i.e. the sister of the women with whom Marino lives, who is the mother of his child) rented a Motorola cellular telephone with the critical phone number (257- 6673). (4) When police officers arrested Marino they found in his possession the same model Motorola cellular phone that Marino's "sister-in-law" had rented (though its serial number had apparently been removed). Marino argues that key portions of the evidence, namely the phone conversations, involve hearsay; that (in light of a history of police harassment) we must consider the "hearsay" unreliable; and that, without the hearsay, the evidence is inadequate. Marino is wrong about calling the evidence "hearsay," for the statements spoken at the other end of the phone were not admitted for their truth, but to prove that Marino was the speaker. See Fed. R. Evid. ___ 801(c). We cannot say the district court committed legal error in crediting Detective Wilson's testimony identifying -4- 4 Marino's voice. See United States v. Geer, 923 F.2d at 897 ___ _____________ ____ ("[T]he sentencing judge has broad discretion to decide for himself not only the relevance, but also the reliability of the sentencing information." (citation omitted)). The evidence, we agree, might well have been stronger. But, given Wilson's long acquaintance with Marino, voice recognition was not impossible. That recognition together with (1) the nickname, (2) the "sister-in-law's" phone rental, and (3) Marino's possession of a similar phone in our view is sufficient to meet the "preponderance of the evidence" standard. Cf., United States v. Angiulo, 847 F.2d ___ _____________ _______ 956, 967 (1st Cir.) (holding that voice identification together with circumstantial evidence was sufficient for jury to conclude that defendant participated in conversation), cert. denied, 488 U.S. 928 (1988). As we _____________ have said, Marino does not deny that the person at the other end of the line ("Batman") facilitated the drug sale, nor does he deny that one of the persons with whom "Batman" "associated" in committing his crime (Michael Oboardi) was a felon. The record thus contains sufficient evidence to support the district court's finding that Marino had participated in the drug conspiracy and associated with a known felon. -5- 5 Second, the district court found that Marino had committed another crime on February 5, 1992, by assaulting Dennis Caldarelli with a gun. The evidence before the court consisted primarily of the following: (1) State Trooper Thomas Flaherty testified that at about 3:30 a.m. on that day, Caldarelli arrived at Flaherty's cruiser, parked at a construction site at the Callahan Tunnel. Caldarelli was upset and had a bruise on the side of his face. According to Flaherty, Caldarelli told him that Marino (in a car with another man) had chased Caldarelli's car and forced it off the road (the curb blowing out two of its tires). Caldarelli also stated that Marino had asked him to get into Marino's vehicle; that, once inside the vehicle, Marino had accused him of providing information to the police regarding the shooting of Salemme and had struck him several times on the side of the head with a pistol; and that, while Caldarelli was running away, Marino had fired several shots at him. (2) The record of Marino's original conviction for gun possession in 1989 (upon which the district court relied) showed that Marino had been a suspect in the shooting of Salemme. (3) State Trooper Stephen McDonald testified that Caldarelli had actually made two visits to the ___ Callahan tunnel construction site on the morning in question (the first after he had been run off the road and the second after the pistol-whipping incident). First, at about 2:15 a.m., Caldarelli had driven up to McDonald's cruiser with two flat tires, which Caldarelli said were caused by his having driven over a traffic island. After speaking to McDonald, Caldarelli drove the car into the North End to park it, until he could fix the tires. -6- 6 Second, Caldarelli returned to the tunnel on foot and spoke with Trooper Flaherty. (McDonald testified that he saw this occur about five to ten minutes after Caldarelli drove into the North End, though Flaherty testified that it happened at about 3:30 a.m.) According to Trooper McDonald, on Caldarelli's second visit to the construction site, in addition to telling his story to Trooper Flaherty, Caldarelli explained to Trooper McDonald that his initial tire blow out had occurred because he had been trying to escape Marino, who had been shooting at his car. When Trooper McDonald asked Caldarelli why he had not told him about the shooting when they first spoke (before the alleged pistol whipping incident) Caldarelli replied that he had been too scared to tell the truth. (4) Trooper McDonald placed a call on his radio to the Boston Police. Boston Police Officers Donald Lee and Christopher Boyle responded to the call. Lee testified that when they arrived, Caldarelli described to them both Marino's having shot at Caldarelli's car (forcing him over a traffic island) and Marino's later having pistol-whipped him, accused him of being "with Salemme," and shot at him again as he was fleeing. Officer Boyle offered substantially similar testimony. They both noticed a red bruise on the side of Caldarelli's head. Marino points out that at the revocation hearing Caldarelli essentially denied these events. Caldarelli conceded that the side of his head was bruised, but said that an unknown person had "sucker-punched" him. Marino adds that the hearsay evidence to the contrary (Caldarelli's statements to the State Troopers and Boston Police Officers) was not sufficiently reliable to warrant the court's findings. -7- 7 We agree with Marino that the statements of Caldarelli to State Troopers Flaherty and McDonald and Boston Police Officers Lee and Boyle are hearsay, though they might well be admissible in ordinary court proceedings as "excited utterances." See Fed. R. Evid. 803(2). ___ Regardless, there are considerable indicia of reliability supporting the officers' statements, such as their detail, the undenied bruises, and the flat tires. Also, there are plausible reasons for Caldarelli's later change of heart, namely the fear that Marino might retaliate if Caldarelli testified against him (just as Marino was alleged to have done regarding the Salemme shooting). Marino, in effect, says that the officers made up this story as part of an effort to harass him. But, the record does not warrant such a conclusion -- indeed it suggests that Troopers Flaherty and McDonald knew neither Marino nor Officers Boyle and Lee -- and there is nothing here that would warrant a highly unusual appellate court disregard of a district court's credibility determination. Finally, Marino argues that the district court should not have admitted the record related to his prior conviction. He says that to do so is to admit a "past bad act" and, therefore, to violate normal evidentiary rules -8- 8 that keep such matters out of criminal trials. Fed. R. Evid. 404(b). The Federal Rules of Evidence, however, do not apply in this case. See U.S.S.G. 6A1.3; Fed. R. Evid. ___ 1101(d)(3). And, in any event, the principles they embody make such evidence inadmissible only when its object is to show a propensity to commit crimes or, essentially, to help a fact finder reason "he did it before, so he'll do it again." See Fed. R. Evid. 404(b) ("Evidence of other ___ crimes, wrongs, or acts is not admissible to prove the character of a person in order to suggest action in conformity therewith."). Such evidence is admissible, however, for "other purposes," such as to show, as here, a defendant's "motive" for a crime, id.; or why other ___ witnesses (here the victim) might be lying at trial, cf. ___ United States v. Dennis, 625 F.2d 782, 800 (8th Cir. 1980) _____________ ______ ("Prior acts evidence . . . is admissible to show victim's fear . . . ."). We find nothing improper in using the earlier evidentiary record as it was used in this case. The judgment of the district court is Affirmed. _________ -9- 9