May 3, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1867

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

JOHN LAPINSKI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Torruella, Cyr and Stahl,
Circuit Judges.

John Lapinski on brief pro se.

Lincoln C. Almond, United States Attorney, and Anthony C.

DiGioia, Assistant United States Attorney, on brief for appellee.

Per Curiam. The appellant, John Lapinski, appeals an

order of the district court revoking his term of supervised

release and imposing an 18 month term of incarceration. We

affirm.

I.

In 1989, Lapinski pled guilty, in the United States

District Court for the Southern District of Florida, to one

count of knowingly and with intent to defraud possessing

fifteen or more unauthorized access devices [credit cards],

in violation of 18 U.S.C. 1029(a)(3). He was sentenced to

a 27 month term of imprisonment and a 3 year term of

supervised release. Among the conditions applicable to

Lapinski s term of supervised release was the standard that,

while on supervised release, he shall not commit another

federal, state, or local crime.

Upon his release from prison, Lapinski moved to Rhode

Island and his supervision was transferred to the United

States Probation Department there. In 1991, he was arrested

and charged with 2 counts of sexual assault in the second

degree. In February 1992, Lapinski entered a plea of nolo

contendere to the reduced charges of 2 counts of simple

assault. He was sentenced to a 1 year term of imprisonment,

suspended, and placed on probation for 1 year.

Shortly thereafter, at the request of Lapinski s federal

probation officer in Rhode Island, jurisdiction over Lapinski

was transferred from the Southern District of Florida to the

District of Rhode Island where a supervised release violation

hearing was held on June 29, 1992. See 18 U.S.C.

3583(e)(3).

II.

Lapinski was represented by counsel at the violation

hearing, where the government presented 2 witnesses and 5

exhibits. The exhibits were (1) a June 12, 1991 criminal

complaint report filed by Collene Garafola with the

Middletown, Rhode Island Police Department, (2) an August 7,

1991 sworn statement of Ms. Garafola, (3) a certified copy of

the judgment of conviction from the State of Rhode Island,

(4) a copy of the judgment of conviction from the Southern

District of Florida, and (5) a copy of the presentence report

in the Florida case. The witnesses were Sergeant Hazel of

the Middletown Police Department and United States Probation

Officer Kurt O Sullivan.1

In the criminal complaint report filed on June 12, 1991,

Ms. Garafola recited that, on that day, while walking from

Lucy s Hearth2 to a 7 Eleven store, she saw a man in a car

stopped at a light. The man then parked the car and watched

1. As Lapinski raises no issues regarding the testimony of
Probation Officer O Sullivan or the admission into evidence
of the Florida judgment or related presentence report, we do
not discuss them further.

2. Lucy s Hearth is a shelter for women, located near St.
Lucy s Church, in Middletown.

-3-

her. As she was making a phone call, the man drove his car

back to the store, got out, and stood near the glass and

watched her. The man then drove away. She reported the

license plate number of the car and stated that this same man

had been harassing her and several other residents of Lucy s

Hearth. She described what he was wearing and reported that

he was white, approximately 25-26 years of age, 5 9" tall,

thin, with a light complexion, dirty blond hair and blue

eyes. She reported that she believed his first name was

John.

She also reported that this same man had assaulted her

outside that same store, four days earlier, on June 8. He

ran up behind her, grabbed her by the back of the shirt, and

turned her around. He then grabbed her buttocks and put one

of his hands up her shirt, touching her breast. She reported

that she kneed him in the groin and ran back to the shelter.

Sergeant Hazel testified that this complaint was a true

and accurate copy of the complaint filed by Ms. Garafola. He

also testified that, in investigating this complaint, he

interviewed Ms. Garafola and took a sworn statement from her.

In the sworn statement of August 73, Ms. Garafola reported

3. Lapinski insists that this August 7 statement is unsworn.
But, Lapinski did not object to the statement on the ground
that it was unsworn. "Absent plain error, an issue not
presented to the district court cannot be raised for the
first time on appeal." United States v. Chaklader, No. 92-

1818, 1993 WL 57772, at *2 (1st Cir. Mar. 10, 1993). Plain
(continued...)

-4-

that, in May 1991, this same man had pulled up in his car

while she was walking in the church parking lot and inquired

about the shelter. He said that he lived across the street

and asked whether there were any single women there who would

be willing to move in with him. He asked her name, whether

she had a boyfriend or children, and told her that she was

beautiful. She walked away. A week later, the man

reappeared in his car as she was walking to the shelter. He

asked whether she had spoken to any women at the shelter

about his offer. Ms. Garafola told him that she had not said

anything and left.

3. (...continued)
errors are those which are " particularly egregious " and
" seriously affect the fairness, integrity or public
reputation of judicial proceedings. " United States v.

Young, 470 U.S. 1, 15 (1985) (citations omitted).

The statement, signed by Ms. Garafola, evidences that it
was "subscribed and sworn" and contains the signature of
Sergeant Hazel as notary public. Sergeant Hazel testified
that he reviewed the accuracy of the statement with Ms.
Garafola, advised her of the penalties of perjury and the
consequences of filing a false police report, and
administered the oath to her. This would seem to establish
that, in fact, the statement was a sworn statement, despite
Lapinski s present objection that it lacked a written
recitation thereon that it was signed under penalties of
perjury. See Peters v. United States, 408 F.2d 719, 722 (Ct.

Cl. 1969) (holding that the absence of the formal requirement
of a notarization in sworn affidavits did not invalidate the
statements or render them inadmissible since they were
actually sworn to before an officer who was authorized to
administer an oath and who testified at subsequent hearing to
the procedures followed). Thus, there was no error, plain or
otherwise, in the characterization of the August 7 statement
as sworn and, like both parties and the court below, we shall
accept it as such.

-5-

The sworn statement also described the assault in June.

The description of the assault in the sworn statement was, in

all respects, consistent with the description of the June 8

assault in the previously-filed criminal complaint. The

description of the assailant differed slightly, however. In

her sworn statement, Ms. Garafola described her assailant as

white, around 6 tall, thin, with medium skin tone, light

brown hair, and said that he "might have" blue eyes.

In addition, Sergeant Hazel testified that he had run a

check of the license plate number reported by Ms. Garafola

and it was registered to John Angelico.4 He presented Ms.

Garafola with an array of 6 photographs. He testified that

she selected Lapinski s photograph as that of the man who had

assaulted her and stated to him that she was 100 percent sure

of that fact. In her sworn statement, Ms. Garafola also

reported that she was positive that the man in the photograph

she selected was the man who had assaulted her.

Lapinski s counsel raised no objection to the admission

of the June 12 criminal complaint or to the certified copy of

the Rhode Island judgment of conviction. He objected to the

admission of the August 7, 1991 sworn statement as being

stale. That objection was overruled. On cross-examination,

Sergeant Hazel conceded that he had not taken Ms. Garafola s

4. It is undisputed that John Angelico is an alias of John
Lapinski.

-6-

original statement of June 12 and Lapinski s counsel

highlighted the differing descriptions of the assailant given

by Ms. Garafola in her two statements.

Lapinski also testified. He stated that he had a common

law wife, with whom he had been living for 8 years, and 1

child. He further stated that he recalled seeing a woman in

front of the 7 Eleven store in June 1991. She looked like

she was crying. He pulled over in his car to talk to her.

She said she had a problem with her boyfriend and that she

was staying at a shelter. He told her his name and that, if

she ever needed anything, he lived across the street. He

remained in his car the entire time. The stoplight turned

green; he drove away and never spoke to her again. The

exchange lasted perhaps 1 or 2 minutes.

His counsel further inquired, "Were you trying to pick

her up?" Lapinski answered, "Yeah. ... well not trying to

pick her up so much, but more to, you know to make a friend.

I mean, I, you know, try to be friendly with as many people

as I can." Lapinski stated that, although he never spoke to

her again, she may have seen him because, in addition to

living across the street from the 7 Eleven store, he worked

in an apartment complex next door to that store and traveled

back and forth many times daily. He also testified variously

that he was "about 6 2"" and "probably 6 2 " maybe. Almost 6

feet, close to it." He testified that he pled nolo

-7-

contendere to simple assault on counsel s advice that he had

no other choice, but that he never had any physical contact

with Ms. Garafola.

On cross-examination, Lapinski testified that, although

he recalled speaking to a woman in front of the 7 Eleven

store in May, June, or July 1991, he did not recall what she

looked like or know whether the incident involved Collene

Garafola. He did recall that the road was extremely busy

with traffic and that one had to be alert because of cars

pulling in and out of the traffic lanes. Nonetheless, he

observed a woman looking depressed and leaning against the

bus stop on the side of the road.

The following exchange also occurred:

DiGioia5: Isn t it true that you ve been trying to
pick up, if you will, young ladies who lived
in that shelter --

Lapinski: Well --

DiGioia: the better part of the month of May, June, and
July?

Lapinski: Yes, I talked to a few women on the -- in the
area, and one other one I found that also
lives in the shelter.

DiGioia: And isn t it true that you were specifically
looking for women who looked like they came
from the shelter?

Lapinski: No, sir. When I --

5. Anthony DiGioia was the government s attorney.

-8-

DiGioia: Isn t it true that you would approach these
women and ask them if they would come to live
with you just for cooking and cleaning?

Lapinski: No, sir. I never asked them to -- if they
wanted to cook and cleaning [sic].

DiGioia: Now, did you every [sic] approach any young
lady down there, in that vicinity and ask her
to come stay with you, and make a motion down
towards, towards your pants, a motion as if to
indicate masturbating?

Lapinski: No, sir.

DiGioia: Never did anything like that?

Lapinski: No. Why? That s senseless.

DiGioia: That s senseless? Your only approach to these
young women was that you were concerned about
trying to help them out, is that your
testimony?

Lapinski: Not concerned about trying to help them out.
But, you know, concerned about maybe taking
them for a, for a dinner, or for a drink.
That s it. I mean I m not a -- in the paper
they made it look like a maniac I jump out of
a car and I beat somebody up for what reason?
I don t understand. What s the -- you know,
in front of millions of people -- not millions
of people, but at least hundreds of people in
shopping plaza, next door. I don t
understand.

Lapinski testified that he had no choice but to plead

nolo contendere because, he said, his retained counsel would

no longer represent him without an additional fee. He never

informed the state court that he could not afford counsel.

He said that he tried to tell the judge that he wanted to go

to trial but could not afford counsel, but that his attorney

-9-

"kept elbowing me in the side saying, "No. No."" and he

never had the chance to tell his side of the story.

The district court found by a preponderance of the

evidence that Lapinski committed a second degree sexual

assault on or about June 8, 1991, in violation of Rhode

Island General Laws 11-37-4 and 5 and in violation of the

conditions of his supervised release.6 The court found the

"vivid" account of the incident contained in the sworn

statement to be credible. Further, Ms. Garafola had

described Lapinski and his automobile and had picked out his

photograph from the array. The court found not credible

Lapinski s testimony that he stopped at the side of the road

6. Lapinski pled nolo contendere to the lesser charges of
simple assault. However,
[u]nder 18 U.S.C. 3563(a)(1) and
3583(d), a mandatory condition of
probation and supervised release is that
the defendant not commit another federal,
state, or local crime. A violation of
this condition may be charged whether or
not the defendant has been the subject of
a separate federal, state, or local
prosecution for such conduct. The grade
of violation does not depend upon the
conduct that is the subject of criminal
charges or of which the defendant is
convicted in a criminal proceeding.
Rather, the grade of the violation is to
be based on the defendant's actual
conduct.
U.S.S.G. 7B1.1, comment. (n.1).

The preponderance of the evidence is the applicable
standard for the revocation of supervised release. United

States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993); 18

U.S.C. 3583(e)(3).

-10-

to comfort and try to make friends with depressed young

women. Nor did it find credible Lapinski s suggestion that

his nolo contendere plea was involuntary.

Pursuant to U.S.S.G. 7B1.1(a)(2),p.s., second degree

sexual assault is a Grade B Violation. With Lapinski s

Criminal History Category of IV, the guidelines established a

sentencing range of 12 to 18 months. U.S.S.G. 7B1.4(a),p.s.

Based on the evidence, Lapinski s prior history of probation

revocation, and its conclusion that Lapinski s testimony was

perjured, the district court concluded that a lengthy

sentence of incarceration was necessary and ordered that

Lapinski be sentenced to an 18 month term of imprisonment.

III.

On appeal, Lapinski claims that evidence of his nolo

contendere was improperly admitted and that he should have

been allowed to confront and cross-examine Ms. Garafola.

These arguments were not raised in the district court.

Therefore, as with his contention that Ms. Garafola s August

7 statement was unsworn, supra at note 3, we review only for

plain error.

A.

We turn to his claim regarding the nolo contendere plea.

Lapinski argues that it was admitted in violation of Fed. R.

-11-

Crim. P. 11(e)(6).7 Rule 11(e)(6) of the Fed. R. Crim. P.

states, in pertinent part:

Except as otherwise provided in this paragraph
[not relevant here], evidence of the following is
not, in any civil or criminal proceeding,
admissible against the defendant who made the plea
or was a participant in the plea discussions:
. . .
(B) a plea of nolo contendere.

Our response is multifold. First, we note that in this

case we are dealing with a nolo contendere plea which was

entered in state court. And, it may be that, since Rule 11

did not apply in the first instance to the taking of this

plea, that provision of Rule 11 purporting to bar its

admission also is inapplicable. United States v. Guadarrama,

742 F.2d 487, 489 n.1 (9th Cir. 1984).8

7. Lapinski also contends that admitting the evidence of his
nolo contendere plea violated the similar provision of Fed.
R. Evid. 410 (Inadmissibility of Pleas, Plea Discussions, and
Related Statements) and Fed. R. Evid. 803(22) (hearsay
exception for judgment of previous conviction entered on plea
of guilty, but not upon plea of nolo contendere). The
Federal Rules of Evidence do not apply to a supervised
release revocation hearing, however. United States v.

Portalla, 985 F.2d at 622; see Fed. R. Evid. 1101(e) (rules

inapplicable to revocation of probation). We, therefore,
need not, and do not, address this contention.

8. Strictly speaking, Rule 11 prohibits evidence of a plea

of nolo contendere. What was admitted at Lapinski s

supervised release revocation hearing (without objection, we
reiterate) was the state court judgment of conviction. The

judgment, however, records that Lapinski was convicted upon a
plea of nolo contendere and the government s attorney, at the
revocation hearing, also initiated the first reference to the
plea in his examination of Sergeant Hazel. Lapinski s
counsel, thereafter, referred to it in his examination of
Lapinski. Because we conclude that error, if any, in the
(continued...)

-12-

In any event, the revocation of supervised release does

not require a conviction of a separate federal, state, or

local crime. Indeed, a violation of the standard condition

of supervised release - that a defendant shall not commit

another federal, state, or local crime - may be found whether

or not the defendant has been the subject of a separate

federal, state, or local prosecution for such conduct.

U.S.S.G. 7B1.1, comment. (n.1). And, the district court did

not purport to base the revocation of Lapinski s supervised

release on his plea of nolo contendere or resulting

conviction. Rather, the district court expressly found that

Lapinski committed second degree sexual assault based on Ms.

Garafola s sworn statement and its conclusion that Lapinski s

testimony to the contrary was not credible. The district

court has "broad legal power to determine witness

credibility," United States v. Portalla, 985 F.2d at 622, and

the evidence cited amply supports the finding, by a

preponderance of the evidence, that Lapinski committed second

degree sexual assault. Any error in admitting evidence of

8. (...continued)
admission of the evidence of the nolo contendere plea, was
harmless, we assume, without deciding, that the admission of
the judgment of conviction was, in this case, the equivalent

of the admission of evidence of a plea of nolo contendere.
But cf. Myers v. Secretary of Health & Human Servs., 893 F.2d

840, 843 (6th Cir. 1990) (holding that Fed. R. Crim. P. 11
and Fed. R. Evid. 410 do not bar the use of a nolo contendere
conviction in an administrative proceeding, despite the
language in the rules prohibiting the use of a nolo plea in
any civil or criminal proceeding).

-13-

Lapinski s plea of nolo contendere, whether plain or not,

was, at most, harmless.9

B.

Lapinski argues that he should have been allowed to

confront and cross-examine Ms. Garafola. Fed. R. Crim. P.

32.1(a)(2) (at a revocation hearing, the person on supervised

release shall be given, inter alia, the opportunity to

question adverse witnesses); see also Morrissey v. Brewer,

408 U.S. at 489 (holding that, at a minimum, due process

gives a parolee, at a parole revocation hearing, inter alia,

the right to confront and cross-examine adverse witnesses,

unless the hearing officer specifically finds good cause for

not allowing confrontation); Gagnon v. Scarpelli, 411 U.S.

778, 782 (1973) (applying the minimum due process

requirements of Morrissey to one facing the revocation of

probation); United States v. Martin, 984 F.2d 308, 310 (9th

9. Even had the revocation of supervised release been based
on Lapinski s state court conviction (and, further assuming
that the admission of that state court judgment was not plain
error), a challenge to that conviction in this proceeding may
well have been inappropriate. "Obviously a parolee cannot
relitigate issues determined against him in other forums, as
in the situation presented when the revocation is based on
conviction of another crime." Morrissey v. Brewer, 408 U.S.

471, 490 (1972); cf. United States v. Paleo, 967 F.2d 7, 13

(1st Cir. 1992) (holding that a defendant may challenge, in a
federal sentencing proceeding, the constitutionality of past
convictions, offered to increase the length of a present
sentence). Even if appropriate, the challenge would be
unsuccessful based, as it was, only on Lapinski s self-
serving statement, rejected as not credible by the district
court, that his nolo contendere plea was involuntary.

-14-

Cir. 1993) (stating that Fed. R. Crim. P. 32.1 incorporates

the Morrissey minimum due process requisites and applies them

to a supervised release revocation hearing).

Although Lapinski objected to the August 7 sworn

statement as stale,10 he did not complain in the district

court specifically of a lack of opportunity to confront and

cross-examine Ms. Garafola. And, he offered no challenge to

the government s explanation that it had not presented Ms.

Garafola because it was unable to locate her. On appeal,

Lapinski points to the Rule 32.1(a)(2) advisory committee s

note, wherein it states that "the probationer does not have

to specifically request the right to confront adverse

witnesses." Notwithstanding the existence of this right

independent of a request, we do not think that Lapinski

reasonably can stand mute below and then premise reversible

error per se on this ground. We, therefore, shall review

this claim for plain error only.

We find none. Morrissey and Gagnon (as extended by

caselaw to the revocation of supervised release) provide one

in Lapinski s position with some right to confront and cross-

examine an adverse witness. But, the revocation proceeding

10. The August 7, 1991 statement recited encounters with
Lapinski in May 1991, the June 8, 1991 assault, and a further
encounter on June 12, 1991. Counsel s complaint that the
August 1991 statement was stale apparently refers not to the
interval between May and August of 1991, but to the interval
between August 1991 and the June 1992 revocation hearing.

-15-

is not the equivalent of a criminal prosecution. Morrissey

v. Brewer, 408 U.S. at 489. The district court in a

supervised release revocation hearing may consider "evidence

including letters, affidavits, and other material that would

not be admissible in an adversary criminal trial." Id.; see

also United States v. Portalla, 985 F.2d at 622 (reciting

that the Federal Rules of Evidence do not apply to a

supervised release revocation hearing); Fed. R. Evid. 1101(e)

(rules inapplicable to revocation of probation). And,

"[w]hile in some cases there is simply no adequate

alternative to live testimony," Morrissey does not "prohibit

use where appropriate of the conventional substitutes for

live testimony, including affidavits, depositions, and

documentary evidence." Gagnon v. Scarpelli, 411 U.S. at 782-

83 n.5.11

Courts, since the Morrissey and Gagnon decisions, have

balanced the right of the parolee or probationer [and we

would read here also releasee] to confrontation and cross-

examination against the government s reason for denying it.

11. Lapinski claims to be prejudiced from the lack of Ms.
Garafola s live testimony because such testimony, he says, is
more reliable, i.e., the willingness to testify falsely is
impaired when the witness is under oath and in the presence
of the accused. The first part of this contention is
premised on his companion contention that Ms. Garafola had
made no statement under oath. We have rejected that

contention, supra at note 3. And, even accepting the

preference for face-to-face confrontation, as discussed
infra, the government s explanation for her absence at the

revocation hearing is credible and unchallenged.

-16-

See, e.g., United States v. Simmons, 812 F.2d 561, 564 (9th

Cir. 1987); United States v. Bell, 785 F.2d 640, 642 (8th

Cir. 1986); United States v. Penn, 721 F.2d 762, 764 (11th

Cir. 1983). The government stated that it did not present

Ms. Garafola at the revocation hearing because it was unable

to locate her. Given her residence at a shelter at the time

of the reported incident, this explanation is inherently

credible. Indeed, even on appeal, Lapinski suggests nothing

which would cast doubt on that statement.

We focus, therefore, on the reliability of the evidence

which the government offered in place of Ms. Garafola s live

testimony. United States v. Simmons, 812 F.2d at 564

(reliability of evidence may provide a basis for its

admissibility); United States v. Bell, 785 F.2d at 643

(same); United States v. Penn, 721 F.2d at 766 (same); see

also United States v. Portalla, 985 F.2d at 622 (stating

that, even though the evidence at a revocation hearing need

not satisfy the Federal Rules of Evidence, the evidence

nonetheless must be reliable).

We conclude that her sworn statement of August 7 bears

sufficient indicia of reliability such that its admission

into evidence was not plain error.12 Ad initio, we point

12. The bulk of Lapinski s argument on appeal appears
directed at the August 7 sworn statement. To the extent that
his brief reference to the unreliability of police reports is
intended as an attack on the admission of the June 12
criminal complaint, it is unavailing. The August 7 sworn

-17-

out that this sworn statement, no different from an

affidavit, is a "conventional substitute[]" for live

testimony, as recognized by the Court. Gagnon v. Scarpelli,

411 U.S. at 782-83 n.5. Even apart from this, the statement

was quite detailed: it related a series of encounters with

the same man over a period of months; it provided the name

"John" that the man had disclosed during one of these

encounters and the license plate number of John Lapinski s

car; it recorded Ms. Garafola s identification of John

Lapinski from a photo spread; and it recounted with

particularity the time, place, and description of the June 8

attack. See Egerstaffer v. Israel, 726 F.2d 1231, 1235 (7th

Cir. 1984) (finding that the detail of a hearsay statement is

one factor in determining reliability).

And, significantly, Lapinski s own admissions

corroborated certain of the circumstances recounted in the

statement, further supporting its reliability. United States

v. Bell, 785 F.2d at 644 (concluding that admissions which

sufficiently corroborate police report support that report s

reliability); United States v. McCallum, 677 F.2d 1024, 1026

statement, apart from a slight difference in the description
of the attacker, was entirely consistent with, and
essentially replicated, the June 12 criminal complaint. The
differences in description were pointed out by Lapinski s
counsel at the hearing. Having found sufficient indicia of
reliability to support the admission of the sworn statement,
there was no plain error in the unobjected-to admission of
the essentially duplicative June 12 criminal complaint.

-18-

(4th Cir.) (same, report of treatment program coordinator and

counselor), cert. denied, 459 U.S. 1010 (1982). To be sure,

Lapinski denied the June 8 attack. But, he conceded that he

had spent the better part of the months of May, June, and

July 1991 approaching women in that same localized area. He

conceded that at least one of the women that he had "found"

lived at the shelter. And, although he denied knowing

whether the incident involved Ms. Garafola, he, in fact,

admitted that, in one instance, he had pulled over in his car

to talk to one woman he had spotted on the side of the

street. Given the district court s broad discretion to

decide the reliability of hearsay information, United States

v. Portalla, 985 F.2d at 623, we find no plain error and,

therefore, no violation of Lapinski s right to confront and

cross-examine witnesses, in the admission of the sworn

statement into evidence at the revocation hearing.13

The order of the district court is affirmed.

13. Of course, the reliability of the sworn statement is
further buttressed by Lapinski s conviction. Even were we to
credit Lapinski s argument against the admission of this
conviction, nonetheless, as the text indicates, there were
other sufficient indicia of reliability to support the
admission of the sworn statement into evidence at the
revocation hearing.

-19-