UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1613

UNITED STATES OF AMERICA,

Appellee,

v.

RALPH H. CARTY,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Torruella and Cyr, Circuit Judges,

and Keeton,* District Judge.

John F. Cicilline for appellant.

Zechariah Chafee, Assistant United States Attorney, with whom

Lincoln C. Almond, United States Attorney, was on brief for appellee.

May 28, 1993

*Of the District of Massachusetts, sitting by designation.

CYR, Circuit Judge. On July 30, 1990, the Providence
CYR, Circuit Judge.

Police executed a state-court search warrant at the residence of

appellant Ralph Carty and seized several firearms and a small

quantity of cocaine. Carty was tried and convicted on two

firearms charges but acquitted on a cocaine charge. Carty

contends on appeal that (1) the evidence seized at the residence

should have been suppressed because the warrant affidavit con-

tained false statements; (2) at the suppression hearing the

district court improperly restricted cross-examination of the

affiant; and (3) the court improperly admitted "other act"

evidence at trial. We affirm.

I

DISCUSSION

A. Suppression Hearing

1. Franks v. Delaware

The warrant affidavit, provided by Detective Nicholas

Cardarelli of the Providence Police Department, formed the

primary focus of the Franks hearing1 conducted before the dis-

trict court.2 Although the Cardarelli affidavit, dated

1At the Franks hearing, see Franks v. Delaware, 438 U.S. 154

(1978), the court also received evidence concerning Carty's post-
arrest statements to the police.

2The Cardarelli affidavit stated in pertinent part:

Within the past few days . . . my reli-
able and confidential informant . . . stated
. . . that Ralph and Pamela [Carty] are stor-
ing and selling illegal [c]ocaine from
[their] house located at 34 Adelaide Ave. 1st
floor apartment, garage area and basement
area, Providence, RI. . . .

July 30, 1990, indicated that the controlled buy had taken place

within the preceding "few days," Cardarelli subsequently learned

that Carty and his family were on vacation during that time and

had not returned to their residence until the evening of July 29.

At the suppression hearing, Cardarelli testified that the con-

Within the past few days this confiden-
tial informant . . . agreed to make a pur-
chase of cocaine from Ralph H. Carty from 34
Adelaide Ave. first floor apartment. . . .
[A]ffiant met this informant at [a] pre-ar-
ranged location [where] the informant was
searched by your affiant and after finding no
contraband the informant was given a sum of
U.S. currency for the purpose of purchasing
suspected cocaine from the Ralph H. Carty
subject at 34 Adelaide Ave. [T]he informant
was driven into the area of 34 Adelaide Ave-
nue and . . . was then observed by your affi-
ant walking over to 34 Adelaide Avenue. . . .
[T]he informant was observed knocking on the
front door . . . and then . . . entered this
location. A short time later the informant
was . . . observed . . . walking back to our
pre-arranged location. Never losing sight of
this informant[,] the informant met your af-
fiant back at the pre-arranged loca-
tion. . . . [A]t this time the informant
handed over to your affiant a bag of suspect-
ed cocaine. . . . [A] field test . . .
proved positive. . . .
. . . [T]he informant who has purchased
cocaine several times from either Ralph or
Pamela Carty stated to your affiant that
cocaine was being stored in the garage area
and in the basement area. This informant
purchased cocaine from Ralph on one occasion
when the informant observed Ralph go into the
basement area and came up with a bag of
cocaine. On another occasion the informant
observed Ralph go into the garage area and
return with a bag of cocaine. . . . [T]he
informant stated that Ralph hides the cocaine
in different areas of his house and garage
areas so that the police will not be able to
find the large quantity of cocaine if they
. . . raid the house.

3

trolled buy took place between 2:00 and 4:00 p.m. on July 30. He

explained that it was normal police procedure not to reveal the

exact date of the controlled buy so as to protect the identity of

the confidential informant. Cardarelli testified that he drove

the informant to the tenement in which Carty occupied a first-

floor apartment, observed the informant enter and emerge shortly

thereafter with a small baggie containing a substance that

appeared to be cocaine, returned to the Special Investigation

Bureau ("SIB") office, and performed a field test on the sub-

stance. As the test indicated the presence of cocaine, Card-

arelli drafted the affidavit and obtained a search warrant from a

state court judge. At approximately 8:00 p.m. on July 30,

Cardarelli and other officers executed the search warrant at the

Carty residence.

Detective Stephen Berarducci corroborated Cardarelli's

testimony. He testified that he saw Cardarelli at the SIB office

on July 30 at about 2:00 p.m. and was aware that Cardarelli was

going to attempt a controlled buy at the Carty residence.

According to Berarducci, Cardarelli returned to the office around

4:00 p.m. and performed a field test on a small plastic bag of

cocaine, which Cardarelli said had been purchased at the Carty

residence. Berarducci also testified that he received a check

the following day from Sergeant Dennis Lambert, the SIB evidence

control officer, which was used to pay for the informant's

services. A photocopy of the check was admitted into evidence.

Sergeant Lambert testified that he could locate neither

4

a log book entry, nor a "controlled buy form," reflecting a drug

transaction on July 30 conducted by Detective Cardarelli or any

other officer.3 Lambert testified that his records documented a

controlled buy of heroin on July 25 or 26 at the apartment

building in which Carty lived, but that it occurred on the second

floor of the building and was unrelated to any controlled buy at

the Carty apartment on the first floor.

Two of Carty's co-workers testified that he was at work

on July 30 between 9:00 a.m. and 7:00 p.m. Mrs. Carty provided

similar testimony and submitted receipts reflecting Carty's wages

for the day. She further testified that no one came to their

residence between 2:00 p.m. and 4:00 p.m. on July 30. Two other

individuals testified that they were at the Carty residence

throughout the day on July 30 and that no one came to the house

between 2:00 p.m. and 4:00 p.m.

At the conclusion of the suppression hearing, the

district court declined to suppress the evidence seized pursuant

3Sergeant Lambert described the procedure used after an
investigating officer has directed an informant to purchase drugs
with police funds: The investigating officer performs a field
test on the drugs, then fills out a controlled buy form reflect-
ing the date and location of the controlled buy, the number of
the check used to finance the purchase, a description of the
items purchased, and the name of the investigating officer. The
officer attaches the controlled buy form to the drugs, and drops
the narcotics (controlled buy form attached) through a slot into
a safe. The officer logs on the control sheet the amount of
money spent on the drugs. Lambert transcribes the information
from the control sheets into a log book each week. Every month
or so, he opens the safe containing the narcotics, compares the
controlled buy form attached to each bag of narcotics with the
log book, removes and retains the form, and delivers the drugs to
the state health department for destruction.

5

to the warrant as Carty had failed to produce sufficient evidence

to undermine the Cardarelli affidavit.4 Carty contends that he

4The district court explained its findings as follows:

Now, turning to the contention that the
allegations in the warrant are willful false-
hood[s], I must say this is a bold assertion
but nevertheless tinged with a degree of
suspicion as to the accuracy of Detective
Cardarelli's testimony. However, the suspi-
cion is not evidence and certainly not strong
enough to destroy credibility sufficiently to
declare the search illegal.
. . . It is strange indeed [that] no
[record of the controlled buy] could be lo-
cated. This would have clearly established
the date of the purchase. . . .
The detective asserts the buy was defi-
nitely made on the 30th. The affidavit indi-
cates it was made within the past few days
. . . of the 30th. I agree the semantics of
the affidavit lead to an interpretation that
the buy was made prior to the 30th.
However, the officer explained that
preciseness of dates was purposefully avoided
when controlled buys are made in order to
safeguard the identity of the informant and I
am constrained to accept this.
. . . [W]hether or not Ralph Carty made
the alleged sale to the informant on
September 30 [sic] really isn't a vital fact
to be resolved in order to rule on this
motion. The affidavit premising the issuance
of the search warrant did not turn on a pur-
chase being made strictly from Ralph Carty
nor does it say it was purchased from him.
The crucial fact in the affidavit [is] that a
purchase was made from Adelaide Avenue on
September 30 [sic].
I can understand [defense counsel's]
argument here but it would be asking too much
of the Court to conclude that Detective
Cardarelli is a bold-face perjurer, not only
in this courtroom but was at the time that he
made the affidavit and at the time that he
presented it to the State District Court
Judge for the issuance of the warrant. And
so I feel constrained and I do hereby deny
the [suppression] motions. . . .

6

demonstrated that the controlled buy could not have occurred as

described in the Cardarelli affidavit. Without the false state-

ments, he argues, the affidavit was insufficient to establish

probable cause. See Franks, 438 U.S. at 156 (If the defendant

proves perjury or "reckless disregard," by a preponderance of the

evidence, and the untainted content of the affidavit is insuffi-

cient to establish probable cause, the fruits of the search must

be excluded "to the same extent as if probable cause was lacking

on the face of the affidavit.").

We review the district court's findings of fact for

clear error; its conclusion of law de novo. United States v.

Garcia, 983 F.2d 1160, 1167 (1st Cir. 1993) (citing United States

v. Sanchez, 943 F.2d 110, 112 (1st Cir. 1991)). Its denial of

the suppression motion will be upheld if supported by any reason-

able view of the evidence. Id.

Although we find it troubling, as did the district

court, that there is no record of a controlled cocaine buy during

the entire relevant period, our review of the suppression hearing

transcript reveals nothing inherently contradictory or incredible

in Cardarelli's testimony, as corroborated by Detective

Berarducci. First and foremost, Cardarelli's suppression hearing

testimony as to the exact date of the controlled buy (July 30) is

not inconsistent with the time period ("within the past few

days") he gave in the warrant affidavit; July 30 at 2:00 to 4:00

p.m. was "within the past few days" of Cardarelli's preparation

of the warrant affidavit, which occurred late in the afternoon or

7

early in the evening of July 30. Thus, the affidavit was not

necessarily inconsistent with Cardarelli's testimony. Second,

the district court, before whom Cardarelli and Berarducci testi-

fied, credited Cardarelli's explanation that it was customary to

avoid precise specification of the dates of controlled buys in

order to protect the identity of informants. Finding nothing

inherently inconsistent in Cardarelli's testimony, and mindful of

the trial court's superior vantage point, we are satisfied that

there is no sound basis for second-guessing its demeanor-based

credibility determinations at the suppression hearing.5 See

Wainwright v. Witt, 469 U.S. 412, 428 (1985) (determinations of

demeanor and credibility are peculiarly within a trial judge's

province); United States v. Portalla, 985 F.2d 621, 622 (1st Cir.

1993) (recognizing district court's broad power to determine

witness credibility); see also Anderson v. Bessemer City, 470

U.S. 564, 575 (1985) ("only the trial judge can be aware of the

variations in demeanor and tone of voice that bear so heavily on

the listener's understanding of and belief in what is said").6

5Contrary to Carty's contention, we find no indication that
the district court imposed a more stringent standard of proof
than the applicable "preponderance of the evidence" standard.
See Franks, 438 U.S. at 156.

6Appellant claims that the Cardarelli affidavit includes
statements made with reckless disregard for their truth, as it
gave the erroneous impression that Carty personally sold cocaine
to the informant. We need not address the merits of this claim.
As the district court correctly noted, Carty's presence at the
time the undercover buy occurred was immaterial to the establish-
ment of probable cause to search the residence. Since the
affidavit provided probable cause to believe that the informant
purchased cocaine at the Carty residence, without regard to the

identity of the seller, the district court properly denied the

8

2. Right to Confrontation

Carty next asserts that his Sixth Amendment right to

confront adverse witnesses was infringed by the district court's

restrictions on cross-examination of Detective Cardarelli at the

suppression hearing. In the course of cross-examining Cardarelli

about the perceived discrepancy between his testimony and his

affidavit relating to the date of the controlled buy, defense

counsel inquired: "Tell me, Detective Cardarelli, why are you

represented by Mr. Bevilacqua?" When the court refused, on

relevancy grounds, to direct Cardarelli to answer over the

government's objection, defense counsel responded by way of an

offer of proof: "[I]t is my belief that this witness is being

investigated for corruption in the police department." Defense

counsel hypothesized that Cardarelli may have adjusted the

asserted date of the controlled buy to negate Carty's alibi

evidence. Counsel argued that the proposed line of questioning

was intended to determine whether Cardarelli was telling the

truth. Rebuffed by the district court,7 defense counsel urged

motion to suppress. See Franks, 438 U.S. at 156; see also United

States v. Veillette, 778 F.2d 899, 904 (1st Cir. 1985), cert.

denied, 476 U.S. 1115 (1986) (search warrant valid where support-

ing affidavit established probable cause independently of false
statement).

7The district court responded:

I am trying to give you as much leeway as you want to
attack the man's credibility. I think you are entitled
to it. You have cross-examined him vigorously as to
the date of the purchase. He has maintained that a buy
was made on the 30th. There is no question how the
affidavit reads. It's for me to decide whether that's
inconsistent with the affidavit. Now, the fact that he

9

that he be permitted to show Cardarelli's bias, suggesting that

"if, in fact, the investigation is being conducted . . . by the

[f]ederal [g]overnment, then [Cardarelli] has an interest in

making the [f]ederal [g]overnment happy by being a witness who

testifies consistently with the [g]overnment's theory of this

case[, a]nd bias to that extent is a legitimate area of inquiry."

Concluding that it was not "material to the issue here," the

court remained steadfast in its refusal to permit inquiry con-

cerning the supposed investigation.

Carty contends that the proffer demonstrated that the

putative federal investigation into possible corruption involving

Cardarelli was directly related to the events in the case and

probative of Cardarelli's credibility and bias, and, therefore,

that the district court's ruling deprived him of his Sixth

Amendment right to confrontation. "[A] primary interest secured

by [the Confrontation Clause of the Sixth Amendment] is the right

of cross-examination." Douglas v. Alabama, 380 U.S. 415, 418

(1965). Cross-examination is the "principal means by which the

believability of a witness and the truth of his testimony are

tested." Davis v. Alaska, 415 U.S. 308, 316 (1974). Neverthe-

less, the right of cross-examination is not without limits. "On

may be involved in some corrupt practices does not bear
on this case at all nor can it bear on this case nor do
I know of any rule of evidence which would allow that
kind of impeachment of a witness . . . where it is so
far removed from the issue at hand. You just want to
show he is a corrupt man but you can't do that by
trying the allegations that have been made against him.
We don't have a conviction here.

10

the contrary, trial judges retain wide latitude insofar as the

Confrontation Clause is concerned to impose reasonable limits on

. . . cross-examination based on concerns about, among other

things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitive or only

marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679

(1986). See Brown v. Powell, 975 F.2d 1, 3-4 (1st Cir. 1992);

United States v. Malik, 928 F.2d 17, 19-20 (1st Cir. 1991);

United States v. Rivera-Santiago, 872 F.2d 1073, 1084 (1st Cir.),

cert. denied, 492 U.S. 910 (1989) and cert. denied, 493 U.S. 832

(1989). We review district court limitations on cross-examina-

tion for "abuse of discretion." United States v. Boylan, 898

F.2d 230, 254 (1st Cir.), cert. denied 498 U.S. 849 (1990);

Rivera-Santiago, 872 F.2d at 1084.

A criminal defendant's right to cross-examine for bias

is an important component of the constitutional right to confron-

tation. Thus, the trial court may not limit cross-examination in

this area without according the defendant the latitude to conduct

a "minimum threshold of inquiry" sufficient to permit the fact-

finder to make the requisite discriminating appraisal of the

biases of the witness. Brown, 975 F.2d at 5 (quoting United

States v. Jarabek, 726 F.2d 889, 902 (1st Cir. 1984)); United

States v. Kepreos, 759 F.2d 961, 965 (1st Cir.), cert. denied,

474 U.S. 901 (1985); United States v. Tracey, 675 F.2d 433, 437

(1st Cir. 1982). Otherwise, the defendant's right to confronta-

tion will have been infringed unless the factfinder nonetheless

11

possessed "sufficient other information . . . to make a dis-

criminating appraisal of the possible biases and motivations of

the witness[].'" Brown, 975 F.2d at 5 (quoting Tracey, 675 F.2d

at 437).

On the record in this case, we conclude that the

district court acted well within its discretion in declining to

permit cross-examination to proceed after considering the offer

of proof. The court recognized that the conclusory offer of

proof simply speculated that an investigation into possible

police corruption might be underway and might involve Cardarelli.

There was no indication as to the source or basis of the stated

belief, no substantiation, and no representation that the federal

government was involved in any such investigation. Nor was there

any suggestion that the supposed investigation in any manner

related to the events at issue in this case. Thus, the conten-

tion, advanced below and on appeal, that Cardarelli may have

testified with a view to impressing the federal government is not

even based on a speculative belief. Absent any such logical

linkage, the proposed inquiry was irrelevant, just as the dis-

trict court found. Moreover, as the district court was also the

finder of fact at the suppression hearing, the defense was on

notice that it needed to make the strongest offer of proof

possible to overcome the government's objection to this line of

inquiry. Yet the offer of proof was left (and remains) patently

deficient to enable the conclusion that the district court abused

its discretion by ruling the proffer inadequate to warrant

12

further inquiry over the government's objection. Cf. United

States v. Sutherland, 929 F.2d 765, 776-77 (1st Cir.) (limitation

on cross-examination of witness did not contravene Sixth Amend-

ment right to confrontation where defendant "demonstrated abso-

lutely no basis for suspecting bias other than a conclusory

allegation" that the witness hoped to receive favorable treatment

from the government in exchange for his testimony), cert. denied,

U.S. , 112 S. Ct. 83 (1991); Fed. R. Evid. 103(a)(2). We

find no Sixth Amendment violation.

B. Trial

1. "Other Act" Evidence

Finally, Carty contends that the trial court committed

reversible error by admitting "other act" evidence which should

have been excluded under Federal Rule of Evidence 404(b) or 403.

The challenged evidence consisted of post-arrest admissions by

appellant Carty relating to a drug source. At trial, Detective

Cardarelli testified as follows:

Mr. Carty stated to me that he also had a
location on Route 95 in Attleboro where he
would drive his white Camaro to meet a so-
called person, he didn't mention any name or
didn't give any description, at a road side
rest stop where this person would meet him
and leave drugs underneath a trash container
at that roadside stop and he would retrieve
the drugs and bring them back to the City of
Providence. And I then asked him why did you
go through all that trouble? And he says,
because this person does not want to come
into the City of Providence because there's a
lot of heat on drug activity in the City of
Providence.

13

Another police officer testified that he overheard the conversa-

tion, and corroborated Cardarelli's testimony. When asked

whether Carty described what he was buying, the officer replied,

"coke."

Admissible "other act" evidence must survive scrutiny

under Rules 403 and 404(b). First, under the "absolute bar" of

Rule 404(b), the evidence is inadmissible if relevant solely to

show the defendant's character or propensity for criminal con-

duct; it must have some "special relevance" to a material issue

such as motive, opportunity, intent, preparation, plan, or

knowledge. See United States v. Agudelo, F.2d , (1st

Cir. 1993), No. 90-1465, slip op. at 4-5 (1st Cir. Mar. 18,

1993); United States v. Williams, 985 F.2d 634, 637 (1st Cir.

1993); United States v. Donovan, 984 F.2d 507, 512 (1st Cir.

1993). Second, under Rule 403, the trial court must satisfy

itself that the probative value of the evidence is not substan-

tially outweighed by the danger of unfair prejudice, confusion,

or undue delay. See Agudelo, F.2d at , slip op. at 4-5;

Donovan, 984 F.2d at 512; United States v. Devin, 918 F.2d 280,

286 (1st Cir. 1990). The admissibility of "other act" evidence

is committed to the sound discretion of the district court, and

we review its ruling only for abuse of discretion, United States

v. Garcia, 983 F.2d 1160, 1172 (1st Cir. 1993), bearing in mind

that Rule 404(b) is a rule of inclusion, not exclusion, see

Donovan, 984 F.2d at 512; United States v. Fields, 871 F.2d 188,

196 (1st Cir.), cert. denied, 493 U.S. 955 (1989).

14

a. Fed R. Evid. 404(b)

Notwithstanding defense counsel's plaint that the

testimony indicated that Carty was buying rather than distribut-

ing drugs, the district court admitted the challenged evidence on

the ground that it "goes to the possible intent and shows that

[Carty] was one who did distribute or planned to distribute."

Carty contends that the district court improperly ascribed

"special relevance" to the evidence.

The court correctly ruled that the evidence was proba-

tive of intent to commit the charged offense of possession with

intent to distribute, noting that "you have to buy [cocaine] to

sell it." See, e.g., Garcia, 983 F.2d at 1173 (prior arrest for

dealing in cocaine admissible to show intent to possess and

distribute cocaine) (quoting United States v. Hadfield, 918 F.2d

987, 994 (1st Cir. 1990) (citing cases)). The evidence was

probative of opportunity as well. Thus, since the "other act"

evidence permitted at least one relevant non-propensity and non-

character based inference, see United States v. Nickens, 955 F.2d

112, 124 (1st Cir.), cert. denied, U.S. , 113 S. Ct. 108

(1992), it satisfied the requirements of Rule 404(b).

b. Fed. R. Evid. 403

Appellant contends that the probative value of the

evidence was greatly outweighed by its prejudicial effect, as the

government did not link the "other act" evidence to the cocaine

seized from Carty's garage, nor did it establish the quantity

previously purchased or show that it was part of a continuing

15

scheme or conspiracy.

Only in exceptional circumstances will we reverse a

trial court's evidentiary ruling in the face of a Rule 403

challenge. Garcia, 983 F.2d at 1173; United States v. Garcia-

Rosa, 876 F.2d 209, 221 (1st Cir. 1989), cert. denied, 493 U.S.

1030 (1990). Appellant has not shown that the probative value of

the "other act" evidence was substantially outweighed by its

unfair prejudice. See Onujiogu v. United States, 817 F.2d 3, 6

(1st Cir. 1987) ("The fact that a piece of evidence hurts a

party's chances does not mean it should automatically be exclud-

ed, [or] there would be precious little left in the way of

probative evidence in any case"). As Carty's post-arrest state-

ments relating to a cocaine source were probative of his intent

and opportunity to possess and distribute cocaine, see supra Part

I.B.1.a., and there was no "unfair prejudice,"8 Rule 403 posed

no barrier to their admission in evidence.9

Affirmed.

8Although Carty suggests that the "slightest prejudice"
resulting from improper admission of the "other act" evidence
might have caused the jury to disbelieve a defense witness who
testified that he, rather than Carty, owned the weapons seized
from the Carty residence, we are hard-pressed to discern any

harm. Since the jury acquitted Carty on the cocaine charge to
which the "other act" evidence related, we consider the sugges-
tion far-fetched.

9Finally, Carty argues that the court erred by not giving
limiting instructions to the jury either contemporaneously or in
its charge. Carty waived the objection by requesting neither.
See Fed. R. Crim. P. 30 & 52(b). Moreover, as we are confident

that the lack of limiting instructions did not "seriously affect
the fundamental fairness and basic integrity of the proceedings,"
there was no plain error. See United States v. Barnett, F.2d

, (1st Cir. 1993), No. 91-1890, slip op at 25-26 n.14.

16

Dissent follows.

TORRUELLA, Circuit Judge (Dissenting). I dissent
TORRUELLA, Circuit Judge (Dissenting).

because the so-called "other act" evidence relating to a drug

source unconnected to the facts of the present case and admitted

under Federal Rules of Evidence 404(b), is nothing more than

improper propensity or character evidence. I disagree with my

colleagues in the majority that it is "far-fetched" that this

evidence influenced the jury in any way because Carty was acquit-

ted of the cocaine charge. Ante, at 16 n.9. The objected

evidence branded him as a drug dealer, not necessarily as the

possessor of the small amount of cocaine found. As such a

nefarious person, the jury could very well have believed that the

firearms were his tools of the trade. The improper character

evidence easily could have carried the day for the Government,

considering the highly contradictory nature of the proof it

presented. Ante, at 3-5. In view of the constitutional burden

required of the Government in a criminal case, I fail to see why

all the speculation regarding what the jury did or did not do

with this improper evidence, should be weighted against defen-

dant.

Appellant should be granted a new trial.

17